498 S.E.2d 655

The STATE, Respondent,

v.

Elliott Gilbert SALISBURY, Jr., Appellant.

No. 2792.

Court of Appeals of South Carolina.

Submitted Nov. 4, 1997.
Decided Feb. 17, 1998.
Rehearing Denied April 23, 1998.

John L. Drennan and Theodore N. Lupton, N. Charleston, for Appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Columbia; and Solicitor Walter M. Bailey, Jr., Orangeburg, for Respondent.

PER CURIAM:

A jury convicted Elliott Gilbert Salisbury of driving under the influence (DUI). He appeals. We affirm.

## FACTS

On December 23, 1995, at approximately 1:50 a.m., a pickup truck driven by Salisbury approached four highway patrol officers. The car in which the officers were riding was not equipped with a radar detector. One officer believed Salisbury was speeding because the officers were driving at the legal speed limit, yet Salisbury caught up with them. The officers pulled onto the shoulder of the road, let the truck

pass, and caught up with it at a stop light. When the light turned green, the truck appeared to be going over the 45 mile per hour speed limit. It also crossed the centerline several times. Believing Salisbury to be under the influence, the officers activated their blue light.

About a quarter of a mile later, Salisbury pulled into a parking lot and got out of his truck. Officer Alvin Link asked him for his license. Salisbury told Link he had one, but did not have it with him. Link explained he had stopped Salisbury for speeding and weaving on the road. Salisbury acknowledged he had been drinking. According to Link, Salisbury smelled like alcohol, walked unsteadily, spoke with slurred speech, and had bloodshot eyes.

Link decided to administer field sobriety tests. Salisbury could not get halfway through the alphabet. Nor could he complete the "walk and turn" test. Salisbury said he could not perform a "one leg stand test" because he was "too drunk to do that shit." At that point, Link arrested Salisbury for driving under the influence and transported him to the police station for a breathalyzer test. At no time did Salisbury complain of any medical condition which would have affected his ability to perform the field sobriety tests.

Officer Robert Beres, who did not participate in Salisbury's arrest, conducted the breathalyzer test. He informed Salisbury of his right to refuse the test. Like Link, Beres noticed Salisbury walked unsteadily and had bloodshot eyes and slurred speech. Salisbury told Beres he had consumed four beers earlier in the evening and a couple more before leaving the house. Beres ran a simulator test and observed Salisbury twenty minutes before he tested him. Salisbury's breathalyzer test revealed a blood alcohol content of .21.

Salisbury testified he woke up in pain that night because he had back problems. When the officers stopped him, he was going to the store for a painkiller. Salisbury admitted he had four beers between eight and twelve o'clock at night.

Salisbury said problems with his defroster caused him to keep wiping the windshield as he drove to the store. Salisbury also explained he could not recite the alphabet because he had not said it in a long time, he could not walk a straight line because of his back pain, and he could not stand on one

foot because, weighing three hundred pounds, he "could not stand all that weight on one leg."

Salisbury also contended his rotten teeth caused the high reading on the breathalyzer because there are "holes where teeth have been pulled out [that] haven't healed up."

Before trial, Salisbury's counsel moved for "an *in limine* hearing" to determine if the breathalyzer was properly administered. His motion was denied. He also sought a *Jackson v. Denno*[1] hearing concerning statements Salisbury allegedly made during the field sobriety tests. That motion was also denied. However, during the trial the judge did conduct a *Jackson v. Denno* hearing. He determined Link read Salisbury his *Miranda*[2] rights, and Salisbury understood those rights and voluntarily gave a statement.

After the jury charge, Salisbury's counsel asked if the judge had charged on circumstantial evidence.[3] The judge replied he had not given that because "there is no circumstantial evidence." The court noted Salisbury's objection. However, after the jury found Salisbury guilty and the judge sentenced him, he made no additional objection.

## DISCUSSION

### I. Circumstantial Evidence Charge

Salisbury argues the trial court erred in refusing to charge the law of circumstantial evidence. He asserts the State relied entirely or at least substantially on circumstantial evidence to prove he was impaired.

■ Driving under the influence consists of (1) driving a vehicle; (2) within the state of South Carolina; (3) while under the influence of intoxicating liquors, drugs, or any other substance of like character. S.C.Code Ann. § 56–5–2930 (1991). The driving of an automobile while under the influ-

---

1. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. It is unclear from the record if there was a conference on jury charges.

ence of intoxicating liquors may be proven by circumstantial evidence. *See, e.g., State v. Sullivan,* 310 S.C. 311, 426 S.E.2d 766 (1993); *State v. Graves,* 269 S.C. 356, 237 S.E.2d 584 (1977); *State v. Nathari,* 303 S.C. 188, 399 S.E.2d 597 (Ct.App. 1990).

The issue of whether to charge circumstantial evidence in a driving under the influence trial is a troublesome one. South Carolina appellate entities have written numerous opinions instructing trial judges concerning when the evidence requires a circumstantial charge under varying circumstances. Yet, the precise issue of charging circumstantial evidence in a driving under the influence scenario is novel under South Carolina law.

In *State v. Carroll,* 277 S.C. 306, 286 S.E.2d 382 (1982), the South Carolina Supreme Court explained:

When a request is made for a circumstantial evidence instruction, the trial judge may exercise discretion and deny the request when the crime and the identity of the perpetrator are established by direct evidence and the circumstances introduced are merely corroborative. *State v. Jenkins,* 270 S.C. 365, 242 S.E.2d 420 (1978); *State v. Simmons,* 269 S.C. 649, 239 S.E.2d 656 (1977). It has been held that an instruction on circumstantial evidence is not necessary when the evidence is introduced only to show intent. *Belcher v. State,* 504 S.W.2d 858 (Tex.Crim.App.1974); 23A C.J.S. *Criminal Law* § 1250 (1961). Intent is seldom susceptible to proof by direct evidence and must ordinarily be proved by circumstantial evidence, that is, by facts and circumstances from which intent may be inferred. *State v. Tuckness,* 257 S.C. 295, 185 S.E.2d 607 (1971). When all the salient facts of the prosecution's case, including the facts from which intent is inferred, are proved by direct evidence, the prosecution is not relying on circumstantial evidence to an extent requiring a special jury instruction.

We hold that a trial judge may refuse to give an instruction on circumstantial evidence when the State relies on direct evidence to prove the acts of the crime and the identity of the perpetrator and on circumstantial evidence to prove intent. The trial judge acted within his discretion in refusing to give the requested instruction.

*Carroll,* 277 S.C. at 308, 286 S.E.2d at 383. "Where the State does not rely wholly upon circumstantial evidence and no request was made that the trial judge charge the law governing testimony of that class, it is not incumbent upon the trial judge to charge the law pertaining thereto." *State v. Moorer,* 241 S.C. 487, 500, 129 S.E.2d 330, 337 (1963), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991). *See also State v. Langston,* 265 S.C. 74, 216 S.E.2d 875 (1975)(where State does not rely wholly upon circumstantial evidence, objection that trial judge failed to charge law governing that type of evidence is waived by failure to request such instruction, when opportunity is afforded to do so); *State v. White,* 211 S.C. 276, 44 S.E.2d 741 (1947)(where State did not rely solely upon circumstantial evidence, and no request was made for charge thereabout, failure to charge law of circumstantial evidence was not reversible error, although such a charge would have been appropriate).

■   However, "irrespective of a request, the trial judge is required to instruct the jury as to the rules governing circumstantial evidence where the State depends solely upon this class of evidence to support a conviction." *State v. Baker,* 208 S.C. 195, 201, 37 S.E.2d 525, 527 (1946). *See also Moorer,* 241 S.C. 487, 129 S.E.2d 330 (it is well settled that when State depends entirely upon circumstantial evidence for conviction, trial judge must instruct jury as to law governing testimony of that class); *State v. Duck,* 210 S.C. 94, 41 S.E.2d 628 (1947), *abrogated on other grounds by State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991)(if State depends entirely on circumstantial evidence to connect accused with crime charged, then court's failure to charge jury as to rules governing circumstantial evidence constitutes reversible error, even though no request therefor was made).

Whether it is necessary to charge circumstantial evidence on the court's own motion or at all depends upon whether the case relies solely upon such evidence. 75B Am.Jur.2d *Trial* § 1390 (1992). Where the main fact sought to be proved is a matter of inference, the case is one of circumstantial evidence. *Id.* Thus, a circumstantial evidence charge should be given where no witness saw the defendant commit the crime, where he has made no admission thereof, and where the evidence is

circumstantial. *Id.* The failure or refusal to give a circumstantial evidence instruction is not error where there is direct evidence the defendant committed the act charged. *Id.* at § 1391. Where the evidence is partly direct and partly circumstantial, a circumstantial evidence instruction may over-emphasize the circumstantial evidence, while neglecting the equally important direct evidence. *Id.* at § 1400.

In *State v. Grippon,* 327 S.C. 79, 489 S.E.2d 462 (1997), the Supreme Court, relying on *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), recommended a new circumstantial evidence charge. The Court explained:

> Therefore, in a criminal case relying in whole or in part on circumstantial evidence, once a proper reasonable doubt instruction is given, we recommend the jury be instructed as follows:

> > There are two types of evidence which are generally presented during a trial—direct evidence and circumstantial evidence. Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact. The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case. After weighing all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find [the defendant] not guilty.

*Grippon,* 327 S.C. at 83–84, 489 S.E.2d at 464.

■ Inasmuch as South Carolina has not addressed this specific issue as it relates to driving under the influence cases, we look to the decisions of other jurisdictions for guidance.

The Supreme Court of Nebraska addressed the issue whether the trial court erred in refusing to charge the jury concerning circumstantial evidence in the context of a driving under the influence case. *State v. Lewis,* 177 Neb. 173, 128 N.W.2d 610 (1964). Shortly after midnight, Lewis was driving his vehicle when he was arrested for driving while in an intoxicated condition. According to the patrolman, he met

Lewis on the highway and observed Lewis's car crossing back and forth over the center line of the highway. He turned his car around and followed Lewis. He further observed Lewis's car weaving about on the highway. At that point, he stopped Lewis. He testified Lewis's breath smelled like alcohol, his eyes looked watery, his speech was slurred, and he staggered as he walked from his car to the patrol car. Lewis told the patrolman he knew he should not have been driving. The officer found three empty beer cans on the floor of the driver's side of the car.

The patrolman took Lewis to the county jail where, in the presence of the sheriff, he administered three usual tests to determine if Lewis was intoxicated. Lewis failed all three tests. The patrolman and the sheriff each testified that in their opinions Lewis was under the influence of intoxicating liquor. Lewis was convicted of driving while under the influence of alcohol.

On appeal, Lewis claimed the trial court erred in refusing to charge his requested instruction on circumstantial evidence. The Court said:

It is the rule that if circumstantial evidence is relied on by the state in proving the charge against the defendant, it is error to refuse a cautionary instruction on that subject. The alleged circumstantial evidence in the instant case is the facts testified to by the patrolman and sheriff as a foundation for their opinions that defendant was intoxicated. The issue to be decided resolves itself into the question as to whether or not such evidence is circumstantial within the meaning of the applicable rule.

Circumstantial evidence is defined as the attendant facts and circumstances from which a principal fact may be inferred by the usual processes of reasoning. Where the existence of the attendant facts and circumstances is testified to by witnesses, the evidence of the principal fact is said to be direct or positive. Otherwise stated, direct evidence is proof of facts by witnesses who saw acts done or heard words spoken, while circumstantial evidence is proof of collateral facts and circumstances from which the mind infers the conclusion that the fact sought to be established in fact existed. The evidence of the patrolman and sheriff

in the present case was direct or positive, and not circumstantial. There was no duty on the part of the trial court, therefore, to give a cautionary instruction on circumstantial evidence.

*Lewis,* 128 N.W.2d at 613–14 (citations omitted).

The South Dakota Supreme Court was faced with a similar scenario. *State v. Edmundson,* 379 N.W.2d 835 (S.D.1985). At approximately 10:50 p.m., a police officer observed the defendant drive off the curb of the parking lot at Boyd's Bar. The officer followed the defendant for about two miles. According to the officer, the car was weaving, drifting on and off the shoulder of the road, crossed the centerline once, and veered halfway into the yellow hash marks of an intersection.

In view of these observations, the officer activated his red lights and attempted to pull the vehicle over. Although the defendant did not immediately pull over, he eventually stopped. Upon noticing the smell of alcohol, the officer asked the suspect to walk back to the patrol car. The officer testified the defendant had to use both his car and the patrol vehicle to balance himself while he tried to walk to the patrol car. Additionally, the officer noted the defendant smelled like alcohol, slurred his speech, and had bloodshot, watery eyes.

Thereafter, the defendant consented to take several field sobriety tests. In the first test, the defendant recited the alphabet in a slurred fashion. In the eye scan test, the officer noted the defendant's eyes moved in a jerky manner. Additionally, the defendant failed a breath test which the officer administered.

At trial, the police officer testified that in his opinion the defendant was intoxicated. The jury found the defendant guilty of driving while under the influence of alcohol.

On appeal, the defendant argued the trial court erred in refusing to instruct the jury on direct and circumstantial evidence. He contended the way he walked, talked, acted, and performed the field sobriety tests were all "secondary facts" from which the police officer inferred he was intoxicated. He claimed, therefore, since the State substantially relied on

circumstantial evidence to support its case, he was entitled to an instruction on direct and circumstantial evidence.

The Court disagreed and concluded:

"[D]irect evidence is evidence which, if believed, proves the existence of the fact in issue without inference or presumption; it is evidence which comes from an 'eyewitness,' or one who speaks directly of his own knowledge on the main or ultimate fact to be proved, or who saw or heard the factual matters concerning which he testifies[.]" 29 Am.Jur. *Evidence* § 4 (1967) at page 37. Here, the police officer formed his opinion that Edmundson was intoxicated based on his direct observations of Edmundson's behavior on the night in question. Thus, the officer saw Edmundson drive his car off of the curb at Boyd's Bar and then proceed to weave over the roads. After he managed to stop Edmundson's vehicle, the police officer observed the physical indicia of intoxication as evidenced by Edmundson's watery eyes, slurred speech, unsteady gait, and the odor of alcohol about his person. Moreover, the officer watched Edmundson unsuccessfully perform each of the seven field sobriety tests.

Edmundson now contends that his physical ailments could have affected his ability to perform the dexterity tests. However, it is undisputed that the officer asked Edmundson whether he had any physical disabilities before the tests were administered to him. Although Edmundson responded that he had bad feet which affected his balance, he, nevertheless, stated that he could perform the tests. Furthermore, the record supports the conclusion that the officer did not rest his opinion that Edmundson was intoxicated solely on his performance of the dexterity tests. Rather, it was based on the officer's eyewitness observations of Edmundson's driving, his physical manifestations of intoxication, his failure of the sobriety tests as a whole, and his failure of the preliminary breath test; all which constituted direct evidence which tended to prove to the officer the existence of the fact in issue, to-wit: that Edmundson was intoxicated.

. . . .

Accordingly, we find that the officer herein gave his opinion that Edmundson was intoxicated based upon his observations of Edmundson at the time of the arrest, and based upon his experience in law enforcement. As such, the officer observed Edmundson, and then formed his opinion that Edmundson was intoxicated grounded on those direct observations. It follows, that consonant with *State v. Lewis, supra,* the evidence herein was direct or positive, and not circumstantial. We hold, therefore, that the trial court was under no duty to give [a circumstantial evidence charge].

*Edmundson,* 379 N.W.2d at 837–39.

The Supreme Court of Tennessee has also affirmed a conviction for driving under the influence of alcohol under similar circumstances. *Kyle v. State,* 208 Tenn. 170, 344 S.W.2d 537 (1961). Police officers were summoned to investigate an accident at an intersection in Memphis. When they arrived, they found a vehicle parked in the center lane of Main Street. Kyle was standing in the street at the rear of the vehicle. When the officers approached Kyle, he informed them his car had been struck by a street railway bus a few minutes before. The officers checked and could find no evidence of a collision. They then walked with Kyle to their car and questioned him further. Kyle told the officers he stopped his car in the center lane when the railway bus hit him while attempting to pass him. During the conversation, the officers decided Kyle was intoxicated. Kyle later admitted to the officers he was driving the automobile.

Kyle maintained the trial court erred in failing to charge the jury on circumstantial evidence. Under Tennessee law, "where a case is based wholly on circumstantial evidence then it is reversible error to fail to charge circumstantial evidence, but if there is some direct evidence . . . then the rule charging circumstantial evidence no longer is necessary." *Id.* 344 S.W.2d at 539. No one actually saw Kyle driving his car. Police found him in an inebriated condition, standing outside his parked vehicle. The Court ultimately held the circumstantial evidence charge was unnecessary because of Kyle's admission he had been driving the car, which the court characterized as direct evidence.

Additionally, the Georgia Court of Appeals has discussed whether the trial court erred in refusing to give a circumstantial evidence instruction. *Davis v. State,* 172 Ga.App. 710, 324 S.E.2d 559 (1984). In *Davis,* a police officer observed the defendant drive across the centerline of a highway about 11:45 p.m., and followed him on a dirt road. The defendant stopped at a house. When the officer asked for his driver's license and insurance card, he smelled alcohol on the defendant's breath and arrested him. The defendant was given an intoximeter breath test, but put his tongue in the bottle so it would not work properly. The officer testified the defendant's ability to drive was impaired because of alcohol. The defendant was convicted of driving under the influence of alcohol. On appeal, he maintained the trial court erred by failing to charge the jury on circumstantial evidence. The Court explained: "There was direct evidence from the deputy sheriff that appellant was driving his car and that his driving ability was impaired by alcohol. Where there is some direct evidence involved in a case it is not error to fail to charge on circumstantial evidence." *Id.* 324 S.E.2d at 560.

In Salisbury's case, the trial judge did not err in refusing to charge the jury on circumstantial evidence because the State did not rely solely upon circumstantial evidence to prove Salisbury guilty of driving while under the influence of alcohol.

There was direct proof of guilt: Officers Link and Woods saw Salisbury driving the vehicle; they observed it being driven erratically, crossing the centerline three times; Officer Link perceived Salisbury smelled like alcohol, walked unsteadily on his feet, had bloodshot eyes and slurred speech, and had to lean against his truck for support; Salisbury admitted he was too drunk to perform the "one leg stand" test; he failed the other field sobriety tests administered by Link; and Salisbury admitted he had drunk at least six beers.

The State submitted some direct evidence (1) that Salisbury was driving the vehicle, (2) within the State of South Carolina, and (3) that he was under the influence of alcoholic beverage. Where, as here, direct evidence is presented to establish the elements of the crime and the identity of the perpetrator, even though some of the circumstances introduced are merely corroborative, the trial judge may, in the exercise of his or her

discretion, deny a request for a circumstantial evidence instruction. *See State v. Carroll,* 277 S.C. 306, 286 S.E.2d 382 (1982).

Accordingly, because the State presented some direct evidence and did not rely solely upon circumstantial evidence to prove Salisbury's guilt, the court was not required to charge the law of circumstantial evidence.

## II. Compliance with Rule 5, SCRCrimP

█ Salisbury further argues the court erred in refusing to suppress the results of the breathalyzer test. He claims the State did not comply with his Rule 5 request to obtain the repair and maintenance records and the stock and simulator solution records for the breathalyzer equipment. Salisbury asserts this evidence would have allowed him to impeach the State's attempt to lay a foundation for the breathalyzer results, and to point out the breathalyzer machine's mechanical problems.

Rule 5, SCRCrimP, governs the disclosure of evidence in criminal cases. Applicable in this case are those provisions of Rule 5 which require the disclosure of certain documents, tangible objects, and reports of examinations and tests, that are within the possession, custody or control of the prosecution, and which are material to the preparation of the defendant's defense or are intended for use by the prosecution as evidence in its case-in-chief. Rules 5(a)(1)(C) & (a)(1)(D), SCRCrimP.

In a pre-trial hearing, Salisbury's counsel informed the court he had filed a Rule 5 motion in which he had requested the repair and maintenance records of the breathalyzer machine, the identity of the individual who mixed the stock and the simulator solutions, and the records of when the solutions had been last changed. He asserted without this information, he could not properly examine witnesses concerning the breathalyzer machine. The court denied the motion, but allowed Salisbury's counsel to renew his motion at the conclusion of his cross-examination of the breathalyzer operator.

During his testimony, Officer Beres, the breathalyzer operator, revealed Officer Dukes, as the custodian of the simulator, was responsible for changing the solution. Beres, however,

did not know when the solution was last changed. At that point, Salisbury's counsel renewed his motion. The trial court denied the motion, holding the information requested was not available from the solicitor and was not used in the State's case-in-chief. The court informed Salisbury's counsel he could question the State's witnesses concerning this information, and he could call other witnesses.

The State did not use this evidence in its case-in-chief. Moreover, in response to Salisbury's motion, the solicitor informed the court the requested records were not in the solicitor's office, but may have been available from SLED. Therefore, it is questionable whether the repair and maintenance records even exist. Furthermore, Officer Beres testified he ran a simulator test prior to administering Salisbury's breathalyzer test. He testified concerning the procedure he followed in administering the test and the final test result. Salisbury's counsel also thoroughly cross-examined Officer Beres about the procedure he followed in administering the test, the operation of the machine, the breathalyzer stock solution, the accuracy of the machine, and the maintenance and repair of the machine.

Because Officer Beres extensively testified about the breathalyzer machine, there is no reasonable probability the result would have been different had the evidence been disclosed. Accordingly, the requested records were not material to Salisbury's case.[4] *Cf. State v. Bryant,* 307 S.C. 458, 415 S.E.2d 806 (1992)(*Brady*[5] requires that the State disclose evidence in its possession which is favorable to the accused and material either to guilt or punishment, including impeachment evidence); *Clark v. State,* 315 S.C. 385, 388, 434 S.E.2d 266, 268 (1993)("Impeachment or exculpatory evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."); *United States v.*

---

4. Additionally, we note, as will later be discussed, the State properly laid a foundation for the admission of the breathalyzer results pursuant to *State v. Parker,* 271 S.C. 159, 245 S.E.2d 904 (1978). Therefore, any alleged failure of the State to comply with the Rule 5 request could not have prejudiced Salisbury.

5. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

*Agurs,* 427 U.S. 97, 109–10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976)("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."); *State v. Wilkins,* 310 S.C. 81, 85, 425 S.E.2d 68, 70 (Ct.App.1992)(quoting *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976))(The omission of such evidence "must be evaluated in the context of the entire record."). Therefore, there was no Rule 5 violation. *See* Rule 220(c), SCACR (The appellate court may affirm any ruling upon any ground appearing in the Record on Appeal.).

Even if the State failed to comply with Salisbury's Rule 5 request, the trial court had discretion to provide a proper remedy. If a party fails to comply with the rule, the court "may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Rule 5(d)(2), SCRCrimP; *see State v. Trotter,* 322 S.C. 537, 542, 473 S.E.2d 452, 455 (1996).

The trial court allowed Salisbury's counsel to extensively cross-examine Officer Beres. Moreover, in ruling on the Rule 5 motion, the trial court stated Salisbury could call other witnesses, which presumably could have included the custodian of the breathalyzer machine. Salisbury's counsel, however, did not request a continuance or a recess to call the custodian as a witness. We find no abuse of discretion in the trial court's denial of Salisbury's motion to suppress. *See State v. Davis,* 309 S.C. 56, 419 S.E.2d 820 (Ct.App.1992)(sanctions for noncompliance with disclosure rules are within the discretion of the trial judge and will not be disturbed absent an abuse of discretion); *State v. Newell,* 303 S.C. 471, 401 S.E.2d 420 (Ct.App.1991)(adverse orders regarding discovery may be reviewed on appeal, but they must be affirmed unless the trial court abused his or her discretion).

## III. Admissibility of Breathalyzer Results

Salisbury next argues the court erred in refusing his request for an *in camera* hearing on his motion *in limine.* He contends the court should have determined if the State com-

plied with all the required criteria for the admission of the breathalyzer results. In a related argument, he claims the court erred in admitting the breathalyzer results because the State failed to lay a proper foundation for the test.

■ Prior to admitting the results of a breathalyzer test, the State may be required to prove: (1) the machine was in proper working order at the time of the test; (2) the correct chemicals had been used; (3) the accused was not allowed to put anything in his mouth for twenty minutes prior to the test; and (4) the test was administered by a qualified person in the proper manner. *State v. Parker*, 271 S.C. 159, 163, 245 S.E.2d 904, 906 (1978).

■ The testimony of an operator that he or she had run a simulator test immediately before the actual test, and that the breathalyzer machine gave a reading equal to the percent of alcohol in the simulator solution, is sufficient to establish, *prima facie*, that the machine was working properly and that the correct chemicals had been used. *Parker*, 271 S.C. at 163, 245 S.E.2d at 906. If there is evidence challenging the *prima facie* showing made, the judge must rule upon the admissibility in the light of the entire evidence. *Id.* at 164, 245 S.E.2d at 906.

■ Officer Beres testified as follows. He was a certified breathalyzer operator. According to Beres, the machine he used for the test was inspected quarterly by SLED. Prior to giving the actual breathalyzer test to Salisbury, Beres ran a simulator test to ensure the machine was in proper working order at the time of the test. He ran the simulator test using a solution provided by SLED in accordance with SLED guidelines. Beres, however, was not certain SLED made the solution or that it had been changed every thirty days. Another officer was responsible for changing the solution, and Beres did not know whether that officer had changed the particular simulator solution. In addition, Beres testified there was no way of testing the temperature gauge to see if it was working.

After conducting the simulator test, Beres prepared the machine for Salisbury's test. During this time, he examined Salisbury's mouth for any foreign material and observed him

for the required twenty minutes. Beres did not see Salisbury place anything in his mouth nor did he observe that Salisbury had dentures. He administered the test to Salisbury in accordance with SLED procedures. The test revealed a blood alcohol content of .21.

While Salisbury's counsel was cross-examining Beres, he moved to exclude the results of the breathalyzer test because the State had not laid a proper foundation, *i.e.*, it failed to show the chemicals had been changed and were used properly, the machine had been inspected, Salisbury had been observed for the requisite twenty minutes, or maintenance had been done to check the temperature gauge. The judge denied the motion.

Based on Beres's conflicting testimony concerning the solution, Salisbury asserts the State failed to prove the proper chemicals were used and that the test was administered in the proper manner. Beres, however, testified the solution had been properly changed because the simulator stock solution produced an accurate reading. Moreover, based on his knowledge and experience, Beres believed the machine was in proper working order. We find the trial judge correctly ruled this conflict in testimony went to the weight of the evidence rather than the admissibility of the breathalyzer results. *See State v. Kelley,* 319 S.C. 173, 460 S.E.2d 368 (1995)(trial judge has considerable latitude in ruling on the admissibility of evidence and his or her rulings will not be disturbed absent a showing of probable prejudice).

Although the court denied Salisbury's motion to have an *in camera* hearing on the propriety of the breathalyzer procedures, the State proved all of the relevant *Parker* criteria prior to the introduction of the breathalyzer results. Accordingly, the trial court properly admitted the breathalyzer results into evidence and did not have to conduct an *in camera* hearing to make this determination. *State v. Silver,* 307 S.C. 326, 414 S.E.2d 813 (Ct.App.1992), *aff'd as modified,* 314 S.C. 483, 431 S.E.2d 250 (1993)(criminal defendant does not have an absolute right to a pretrial, *in camera* hearing and ruling on an *in limine* motion to exclude breathalyzer results in a DUI trial).

## IV. Admissibility of Salisbury's Statements

Salisbury argues the trial court erred in refusing his motion for a *Jackson v. Denno* hearing concerning the statements he allegedly made during the roadside field sobriety tests. Furthermore, Salisbury asserts the court erred in failing to suppress the statements and evidence obtained during the field sobriety tests. He contends the officer had him in custody at the time, and he had not warned him of his constitutional right to remain silent. Therefore, he did not make the statements voluntarily.

Pre-trial, Salisbury's counsel requested a *Jackson v. Denno* hearing concerning Salisbury's roadside statements. Specifically, he asked the court "to determine first of all custody." The trial court denied counsel's request, finding Salisbury was not "in custody" during the administration of the roadside field sobriety tests for the purposes of *Miranda*. The judge stated he would not allow any post-arrest statements which were made without Salisbury first being advised of his *Miranda* rights. Salisbury's counsel then requested to "proffer evidence of voluntariness of the field sobriety tests."

During this proffer, Salisbury testified concerning the facts surrounding the roadside questioning and field sobriety tests. Salisbury stated he did not feel free to leave, he believed he was "in custody," and he felt compelled to answer questions and perform the tests. At the conclusion of Salisbury's testimony, the trial court denied counsel's motion and reiterated Salisbury was only entitled to be advised of his *Miranda* rights after he was arrested.

The trial court conducted a *Jackson v. Denno* hearing during Officer Link's testimony when he said he placed Salisbury under arrest. The court ruled Salisbury made his post-arrest statements freely and voluntarily. Additionally, in his charge, the court instructed the jury concerning *Miranda* warnings and the necessity the jury determine that Salisbury's statements were made voluntarily.

Because the facts in this case show the traffic stop and subsequent roadside field sobriety tests did not involve detainment sufficient to rise to the level of a "custodial interrogation," the trial court properly held Salisbury was not "in custody" for the purposes of *Miranda*. *See Pennsylvania v.*

*Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988)(a motorist is not "in custody" during the performance of field sobriety tests, and is therefore not entitled to a recitation of constitutional rights prior to the tests; a motorist's response to questions about his drinking are admissible despite lack of *Miranda* warnings); *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)(routine traffic stops do not constitute "custodial interrogation" for purposes of *Miranda* rule); *State v. Peele,* 298 S.C. 63, 378 S.E.2d 254 (1989)(roadside field sobriety test did not constitute detainment sufficient to rise to the level of a "custodial interrogation"); *State v. Clute,* 324 S.C. 584, 480 S.E.2d 85 (Ct.App.1996), *cert. denied,* (May 27, 1997), *and cert. denied,* —— U.S. ——, 118 S.Ct. 442, 139 L.Ed.2d 379 (1997)(defendant not "in custody" for the purposes of *Miranda* during the administration of field sobriety tests).

■ Although the trial court properly determined *in camera* that Salisbury was not "in custody" during the roadside questioning and field sobriety tests, we find the trial court erred in refusing to conduct a *Jackson v. Denno* hearing on the voluntariness of Salisbury's statements.[6]

■ "Whenever evidence is introduced that was allegedly obtained by conduct violative of a defendant's constitutional rights, the defendant is entitled to have the trial judge conduct an evidentiary hearing outside of the presence of the jury at the threshold point to establish circumstances under which it was gained." *State v. Creech,* 314 S.C. 76, 84, 441 S.E.2d 635, 639 (Ct.App.1994). A defendant in a criminal case is entitled to an independent evidentiary hearing to determine the voluntariness of statements made by the defendant prior to the submission of such statements to the jury. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

---

6. Although Salisbury's counsel proffered evidence, he did not specifically ask the trial court to rule on voluntariness pursuant to *Jackson v. Denno.* Moreover, the judge did not specifically rule on the issue of voluntariness. As such, we question whether this issue was preserved for our review. *See Clute,* 324 S.C. 584, 480 S.E.2d 85 (issue of whether motorist's statements were voluntarily made not preserved because motorist failed to ask for more specific ruling after trial court had already determined motorist was not "in custody").

■ Although Salisbury was not "in custody" when he made the statements, our Supreme Court has held a defendant need not show custody to be entitled to a *Jackson v. Denno* hearing. *State v. Silver,* 314 S.C. 483, 431 S.E.2d 250 (1993), *aff'g as modified,* 307 S.C. 326, 414 S.E.2d 813 (Ct.App. 1992). Custody is a factor to be considered in determining voluntariness; however, a defendant need not show he was "in custody" when he is challenging the voluntariness of his statement. *Silver,* 314 S.C. at 486, 431 S.E.2d at 251. Salisbury, therefore, was entitled to an initial determination of the voluntariness of his statements.

■ Even though the trial court erred in failing to conduct a *Jackson v. Denno* hearing concerning the pre-arrest statements, this error was harmless beyond a reasonable doubt because Salisbury's statements were voluntary, and therefore admissible. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)(even an error of constitutional magnitude may be harmless if, considering the entire record on appeal, the reviewing court finds beyond a reasonable doubt the error did not contribute to the verdict); *State v. Victor,* 300 S.C. 220, 387 S.E.2d 248 (1989)(failure to give *Jackson v. Denno* hearing constitutes harmless error when the only reasonable inference to be drawn from the evidence is that the statement was voluntarily given or the defendant concedes its voluntariness).

Coercive police activity is a necessary predicate to finding a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986); *see State v. Linnen,* 278 S.C. 175, 293 S.E.2d 851 (1982)(statements were given freely and voluntarily where interrogating officers were not coercive or threatening and statements were not procured by improper influence). In the instant case, Salisbury did not assert any facts which would render his statements involuntary other than the fact he was questioned by Officer Link and required to perform field sobriety tests.

The United States Supreme Court has found the atmosphere surrounding routine traffic stops is generally noncoercive and nonthreatening. *Berkemer v. McCarty,* 468 U.S. 420,

104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). An Ohio highway patrolman observed Berkemer's car weaving on the interstate. After following the vehicle for approximately two miles, the officer stopped Berkemer and asked him to step out of his vehicle. Berkemer had difficulty standing. At that point, "[the patrolman] concluded that [Berkemer] would be charged with a traffic offense and, therefore, his freedom to leave the scene was terminated." *Id.* at 423, 104 S.Ct. at 3141. However, Berkemer was not told that he would be taken into custody. The officer then asked Berkemer to perform a "balancing test." Berkemer could not do so without falling down. *Id.*

While at the scene of the traffic stop, the officer asked Berkemer if he had been using intoxicants. Berkemer replied, "he had consumed two beers and had smoked several joints of marihuana a short time before." *Id.* at 423, 104 S.Ct. at 3141. The officer also testified Berkemer's speech was slurred. The officer placed Berkemer under arrest and transported him to the county jail. *Id.* At the jail, Berkemer was given an intoxilyzer test which did not detect any alcohol in Berkemer's system. *Id.* Subsequently, Berkemer responded to the officer's questions concerning his consumption of alcohol and whether he was under the influence of alcohol or drugs. *Id.* at 424, 104 S.Ct. at 3142. At no point during this sequence of events was Berkemer read his *Miranda* rights. *Id.*

The United States Supreme Court held routine traffic stops and the performance of field sobriety tests do not constitute "custodial interrogation" for purposes of the *Miranda* rule. In reaching this decision, the Court stated:

> It must be acknowledged at the outset that a traffic stop significantly curtails the "freedom of action" of the driver and the passengers, if any, of the detained vehicle. Under the law of most States, it is a crime either to ignore a policeman's signal to stop one's car or, once having stopped, to drive away without permission. Certainly few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so....
>
> Two features of an ordinary traffic stop mitigate the danger that a person questioned will be induced "to speak

where he would not otherwise do so freely." First, detention of a motorist pursuant to a traffic stop is presumptively temporary and brief.... In this respect, questioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which is frequently prolonged, and in which the detainee is often aware that questioning will continue until he provides his interrogators the answers they seek. Second, circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police. To be sure, the aura of authority surrounding an armed, uniformed officer and the knowledge that the officer has some discretion in deciding whether to issue a citation, in combination, exert some pressure on the detainee to respond to questions. But other aspects of this situation substantially offset these forces. Perhaps most importantly, the typical traffic stop is public, at least to some degree. Passersby, on foot or in other cars, witness the interaction of officer and motorist. This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse. The fact that the detained motorist typically is confronted by only one or at most two policemen further mutes his sense of vulnerability.

*Berkemer*, 468 U.S. at 436–38, 104 S.Ct. at 3148–49 (citations omitted).

The Court analogized a routine traffic stop to a *Terry* [7] stop because of its similarly nonthreatening character. *Id.* at 439, 104 S.Ct. at 3150. Specifically, the Court stated, "[t]he similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained to such stops are not "in custody" for the purposes of *Miranda.*" *Id.* at 440, 104 S.Ct. at 3150.

In light of the language in *Berkemer*, we find a routine traffic stop and investigation of a possible DUI, does not establish coercive police activity which rendered Salisbury's statements involuntary. During his proffered testimony, Salisbury stated he did not feel free to leave, he believed he was

---

7. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

"in custody," and he felt compelled to answer questions and perform the tests. However, he did not offer any other reason why the statements were involuntary.[8] Although Officer Link testified Salisbury was not free to leave, there is no evidence this was communicated to Salisbury. Therefore, Officer Link's subjective intention could not have affected a determination of whether Salisbury's statements were voluntary. *Cf. Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)(a court's initial determination of custody does not depend on the subjective views harbored by either the interrogating officer or the person being questioned, but on the objective circumstances of the interrogation); *Berkemer,* 468 U.S. at 442, 104 S.Ct. at 3151 ("A policeman's unarticulated plan has no bearing on the question of whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.").

The instant case involved the same noncoercive aspects of *Berkemer:* "[A] single police officer ask[ing] respondent a modest number of questions and request[ing] him to perform a simple balancing test at a location visible to passing motorists." *Berkemer,* 468 U.S. at 442, 104 S.Ct. at 3151; *see Pennsylvania v. Bruder,* 488 U.S. 9, 11, 109 S.Ct. 205, 207, 102 L.Ed.2d 172 (1988). Accordingly, we find the State met its burden to prove by a preponderance of the evidence that Salisbury's statements were voluntarily made. Based on the totality of the circumstances, we hold Salisbury's roadside statements were voluntary and admissible. *See State v. Washington,* 296 S.C. 54, 55, 370 S.E.2d 611, 612 (1988)(quoting *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618 (1972)) ("[T]he prosecution must prove ... by a preponderance of the evidence that the confession was voluntary."); *State v. Doby,* 273 S.C. 704, 258 S.E.2d 896 (1979)(determination of voluntariness requires an examination of the totality of the circumstances surrounding the making of the statement).

---

8. Although Salisbury testified Officer Link placed his hand on his shoulder, he did not indicate this was done in a threatening manner. Moreover, Officer Link stated "if I put my hand on him, it was because he was unsteady on his feet; not in a controlling type or pushing type way."

## V. Sentence

Finally, Salisbury argues the trial court was without jurisdiction to impose the sentence given to him.

Salisbury was indicted for driving under the influence, second offense. The jury convicted Salisbury of driving under the influence. The trial court sentenced Salisbury to one year imprisonment and a fine of $2,000, provided upon the service of sixty days imprisonment or twenty days of public service and the payment of a fine of $1,500, the balance suspended with two years probation.

Salisbury contends the trial court only had jurisdiction to impose a sentence for driving under the influence, first offense.[9] He asserts the jury convicted him of driving under the influence, and the State failed to prove there was a prior conviction to warrant an enhanced sentence.

Issues related to subject matter jurisdiction may be raised at any time, including for the first time on appeal. *Carter v. State,* 329 S.C. 355, 362, 495 S.E.2d 773, 777 (1998). A judge's sentencing authority, however, is distinct from his or her jurisdiction. *State v. Bynes,* 304 S.C. 62, 403 S.E.2d 126 (Ct.App.1991); *see State v. Johnston,* 327 S.C. 435, 489 S.E.2d 228 (Ct.App.1997)(a sentence which exceeds the maximum allowable statutory penalty is not a question of subject matter jurisdiction, therefore unless an objection was made to the sentence at trial the issue is not preserved for review). Because any alleged error in sentencing is not jurisdictional, it requires a contemporaneous objection to preserve the issue for appellate review. *See State v. Garner,* 304 S.C. 220, 403 S.E.2d 631 (1991)(failure to object to sentence at time of its imposition constitutes a waiver of the issue on appeal); *State v. Shumate,* 276 S.C. 46, 275 S.E.2d 288 (1981)(defendant's failure to timely object to or seek modification of his sentence in the trial court precludes him or her from presenting his objection for the first time on appeal). Salisbury's counsel's

---

9. The maximum penalty for driving under the influence, first offense, is a fine of $200 or imprisonment for not less than forty-eight hours nor more than thirty days. S.C.Code Ann. § 56–5–2940(1) (1991).

failure to object to the sentence precludes our review of this issue.[10]

**AFFIRMED.**

CONNOR, ANDERSON, and HUFF, JJ., concur.

---

10. Even if the issue were preserved, the trial court properly sentenced Salisbury for driving under the influence, second offense. Salisbury was indicted for driving under the influence, second offense, and it appears from the record the trial judge was aware of Salisbury's prior conviction. Moreover, the sentence imposed was within the statutory limits for this offense. *See* S.C.Code Ann. § 56–5–2940(2) (1991)(the maximum penalty for driving under the influence, second offense, is a fine of not less than $2,000 nor more than $5,000 and imprisonment for not less than forty-eight hours nor more than one year); *State v. Bynes,* 304 S.C. 62, 403 S.E.2d 126 (Ct.App.1991)(trial judge has discretion to impose any sentence within the limits prescribed by statute).