21754

The STATE, Respondent, v. Monroe Jefferson LINNEN a/k/a Jeffery Monroe Linnen, Appellant.

(293 S. E. (2d) 851)

*Deputy Appellate Defender David W. Carpenter,* of *S. C. Commission of Appellate Defense,* Columbia, and *Jeffrey H. Gray,* Hilton Head, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Preston F. McDaniel,* Columbia, and *Sol. Randolph Murdaugh, Jr.,* Hampton, *for respondent.*

July 8, 1982.

LITTLEJOHN, Justice:

The defendant, Monroe Jefferson Linnen, was tried by jury and found guilty of housebreaking and larceny from the residence of Colonel Stanley Butts. After sentencing to imprisonment by the court, he appealed, alleging three grounds of error warranting a new trial. As copied from his brief, the questions are as follows:

> I. Were appellant's self-incriminating statements acquired in violation of the Fifth and Fourteenth Amendments as explicated in *Miranda v. Arizona* and *Edwards v. Arizona*?
> II. Were appellant's self-incriminating statements involuntarily given?
> III. Did the court err in refusing to instruct the jury of its duty to make a factual determination regarding whether appellant's self-incriminating statements were acquired in compliance with the Fifth Amendment?

The facts leading up to the Defendant's interrogation and subsequent trial are as follows:

> In late 1980 and the early part of 1981, police officers were investigating numerous break-ins and thefts from residences in the Beaufort area. Included among the break-ins was one which occurred at the home of Colonel Butts. Thieves had entered, taken a safe, silverware and other items described in the indictment as being of a $13,000 value. The Sheriff's Department found fingerprints matching those of the Defendant at some of the houses (not Colonel Butts') and requested the Defendant to come to the office for questioning on March 11, 1981. During an interrogation lasting about one and one-half hours, the Defendant denied any involvement in the break-ins. The officers served a warrant upon him and charged him with breaking and entering the homes of Spears and Ragsdale. He was arraigned and filled out an affidavit of indigency and an application for counsel. In the application, he averred that he had a monthly income of $1,200-$1,400, owned 46 acres of land valued at $86,000, and had $4,000 in cash. He was obviously not entitled to a

free lawyer at the expense of the government and was returned to the jail.

On the following day, officers decided to talk with him again, brought him from the jail, and, for the second time, gave him his *Miranda* rights warning. The interrogation was taped and translated and is a part of the record before us. At the inception, the following taped conversation took place between Officer George Wagner and the Defendant, Monroe Jefferson Linnen:

GW: You are presently incarcerated in the Beaufort County Jail?
JL: Yes sir.
GW: You were arraigned at the Courthouse?
JL: Yes sir.
GW: And you have decided to obtain your own attorney?
JL: Yes sir.

The Defendant then affirmed that his rights had been explained to him and the following took place:

Okay. Now Monroe, you completely understand the rights . . . I think this is the second time that these . . . have been given to you.
I understand.
And you're willing to proceed now without the presence or opportunity of your attorney?
Yes sir, yes I do.

The Defendant thereafter talked freely implicating two of his cohorts in several of the illegal break-ins. He also implicated himself as relates to the breaking, entering and stealing from the home of Colonel Butts. Thereafter, he accompanied the officers and directed them to the Butts house and a portion of the ill-gotten gain taken therefrom.

The statements given at the second interrogation were used at the trial over the objection of counsel for the Defendant. He contended then and argues now that the use of his statement violated his Fifth and Fourteenth Amendment constitutional rights as enunciated in *Miranda v. Arizona,* 384 U. S. 436, 475,

86 S. Ct. 1602, 1628, 16 L. Ed. (2d) 694 (1966), and *Edwards v. Arizona,* 451 U. S. 477, 101 S. Ct. 1880, 68 L. Ed. (2d) 378 (1981). *Miranda* determined that interrogation may not occur if an accused person invokes his right to counsel and, even if he submits to interrogation without his attorney being present, such must cease if, during the interrogation, he invokes the right. *Edwards* discusses and sets forth the requirements under which officers may continue to interrogate after the right has been invoked. We hold, as did the lower court, that the right to counsel was not invoked. A reading of the taped and translated interview taken as a whole is devoid of any effort on the part of the Defendant to even be reluctant to testify after he stated he was willing to proceed without the presence of an attorney. In ruling upon this matter, the trial judge said:

> I find as a fact beyond a reasonable doubt that the statements given by the defendant were given after he had been accorded the Constitutional safeguards required by our United States Supreme Court, and that the statements given were the product of his unfettered will. He was under no duress or coercion in regard to the statements that he gave, that they were given without any undue influence, and I would admit the statements, and I would caution, of course, the solicitor, and he's already stated that the only thing he is going to put in in regard to the officer's statements are matters about the Butts case.

Having disposed of the first question set forth hereinabove, adversely to the Defendant, we proceed to discuss questions II and III. Question II submits that the statements were involuntarily given and question III submits that the judge erred in refusing to instruct the jury to make a factual determination regarding whether appellant's statements were voluntary or were acquired in violation of the Defendant's Fifth Amendment right to remain silent. The answer to both questions is to be found in the transcript of the record. The Defendant testifying in his own defense said:

> Q. And did you voluntarily give them a statement?
> A. Yes.

Q. And was the statement that you gave them bear on this case today, the Butts case?
A. Yes Sir.
Q. And you heard Officer Wiley's testimony and Officer Stuart's testimony. Were they truthful in regards to their representations that you made to them?
A. Yes they were.

Counsel for the Defendant argues that the Defendant's statement is not conclusive and that the "voluntary" issue should have been submitted to the jury. We recognize that when an issue of fact is in dispute the matter must be submitted to the jury. However, a search of the entire record reveals, to the exclusion of all other reasonable inferences, that the Defendant's statements were, just as he admitted, voluntary. The determination must be made on the bases of the totality of the circumstances including the background, experience and conduct of the accused. We point out that the Defendant was not entirely unfamiliar with court proceedings. At the time of the interrogation, he was on probation from a Florida conviction for housebreaking.

The trial judge's finding that the statements were free and voluntary cannot be seriously challenged in the light of the Defendant's admissions. While the interrogating officers no doubt encouraged the statements, their action cannot be said to be coercive or threatening, nor were the statements procured by improper influence.

We hold that the statements were admissible in evidence. The constitutional rights of the Defendant, as set forth in the Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States, as well as the corresponding sections of the Constitution of South Carolina, were not violated.

Having found all exceptions without merit, it follows that the conviction and sentence of the lower court are

Affirmed.

Lewis, C.J., and Ness and Gregory, JJ., concur.

Harwell, J., not participating.