## 23058

The STATE, Respondent v. Willie Edward FRANKLIN, Appellant.

(382 S. E. (2d) 911)

Supreme Court

*Deputy Chief Atty. Elizabeth C. Fullwood,* of *S. C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *William Edgar Salter, III,* Columbia; and *Sol. Robert J. Harte,* Aiken, *for respondent.*

Heard May 2, 1989.

Decided Aug. 14, 1989.

TOAL, Justice:

On July 13, 1987, Leroy Moore, the night auditor of the Holiday Inn in Aiken, was murdered by strangulation and the hotel cash register and a money box were stolen. Willie E. Franklin and three other men, Rodney Franklin, Keith

Odom and James Washington, were involved in the commission of the crime.

Willie E. Franklin was convicted of murder, grand larceny and second degree burglary. On appeal, he challenges the admissibility of incriminating statements made to police officers and the jury charge on the principles of accomplice liability.

### 1. *Incriminating Statements*

Franklin contends that the trial court erred in admitting two inculpatory statements. We disagree.

### A. July 15 Statement

On July 15, 1987, Willie Franklin was arrested pursuant to a warrant. He was taken to the office of Wayne Huff, a criminal investigator with the Aiken County Sheriff's Department, for questioning. Investigator Derrick was also present. Huff advised Franklin that he was under arrest for the charge of murder and that Huff was investigating the homicide at the Holiday Inn. Franklin responded, "I ain't did nothing." Huff stated that he wanted to give Franklin his rights, to which Franklin responded, "What do I need rights for?" Huff said that it appeared that the man was beaten to death. Franklin said, "I ain't beat nobody. All I did was hold him while Rodney hit him." Huff told Franklin that he wanted to give him his rights and that he should not say anything else. Franklin stated, "I don't have anything else to say. I want to see an attorney." All interrogation was ceased and Franklin was taken to the county jail.

Following a suppression hearing, the trial judge ruled that these statements were admissible as spontaneous utterances. Franklin contends that the statements fell within the scope of *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966), and, therefore, should have been excluded.

Under *Miranda,* "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the

privilege against self-incrimination." 384 U. S. at 444, 86 S. Ct. at 1612. In discussing confessions and voluntary statements, the Supreme Court noted that:

> [C]onfessions remain a proper element in law enforcement. *Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence.* The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

384 U. S. at 478, 86 S. Ct. at 1630. [Emphasis added.]

In *Rhode Island v. Innis*, 446 U. S. 291, 100 S. Ct. 1682, 64 L. Ed. (2d) 297 (1980), the Supreme Court defined "interrogation" and held that:

> The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

446 U. S. at 300, 100 S. Ct. at 1689.

The State contends that the conversation that took place between Huff and Franklin did not constitute "interrogation" or its "functional equivalent." Reading or attempting to read the *Miranda* rights form would be communication normally incident to arrest. We conclude that the State met its burden by a preponderance of the evidence and that the trial court properly determined that the statements made by Franklin when he interrupted Huff were voluntary and that Huff's responses were not of such nature that he should have known that they would elicit an incriminating response. Therefore, we hold that the July 15 statement was properly admitted.

## B. July 20 Statement

On July 20, 1987, Franklin asked to speak to Huff again. According to Franklin, he wanted to make a telephone call to find out the condition of his girlfriend. She was expecting a baby and he had received information from his brother that she was in the hospital. His request to make a phone call had been denied and he thought Huff would allow him to make the call.

Franklin, Huff and Investigator Derrick went to Huff's office for the interview. Franklin was read the *Miranda* warnings, indicated that he understood them and signed a waiver of rights.

Franklin first made a statement which was not recorded. He then gave a statement which was tape recorded and later transcribed. The recorded statement indicated that Franklin killed Moore. Huff testified that both statements were consistent. Franklin contends that in the first statement, he denied any knowledge of what happened to Moore and that after this statement was made, Huff told Franklin that he could make a phone call after he told Huff what he wanted to hear. Franklin claims that he confessed to the murder just so he could make a phone call. In contrast, Huff testified that Franklin was allowed to make several phone calls, including one made before the first statement was given.

Following a suppression hearing, the trial judge ruled that the recorded July 20 statement was admissible on the grounds that Franklin had been advised of his rights and had indicated that he understood them and that the statement was made freely and voluntarily without any threats or promises.

Although Franklin testified at the suppression hearing that he was given his *Miranda* rights, that he signed the waiver form and that he understood his rights, he contends that the statement was not admissible because it was not voluntarily made.

The test of admissibility of a statement is voluntariness. If a defendant was advised of his *Miranda* rights, but nevertheless chose to make a statement, the "burden is on the State to prove by a *preponderance of the evidence* that his rights were voluntarily waived." *State v. Washington*, 296 S. C. 54, 370 S. E. (2d) 611 (1988) (empha-

sis in original); *State v. Neeley,* 271 S. C. 33, 244 S. E. (2d) 522 (1978). The State bears this burden of proof even where a defendant has signed a waiver of rights form. *State v. Goolsby,* 275 S. C. 110, 268 S. E. (2d) 31, *cert. denied,* 449 U. S. 1037, 101 S. Ct. 616, 66 L. Ed. (2d) 500 (1980). This Court has held, however, that once a voluntary waiver of *Miranda* rights is made, that waiver continues until the individual being questioned indicates that he wants to revoke that waiver or circumstances exist which indicate his "will was impaired." *State v. Moultrie,* 273 S. C. 60, 254 S. E. (2d) 294 (1979), citing *Schneckloth v. Bustamonte,* 412 U. S. 218, 93 S. Ct. 2041, 36 L. Ed. (2d) 854 (1973); *State v. Tyson,* 283 S. C. 375, 323 S. E. (2d) 770 (1984), *cert. denied,* 471 U. S. 1006, 105 S. Ct. 1873, 85 L. Ed. (2d) 165 (1985). The trial judge's determination of the voluntariness of a statement must be made on the basis of the totality of the circumstances, including the background, experience and conduct of the accused. *State v. Linnen,* 278 S. C. 175, 293 S. E. (2d) 851 (1982). The trial judge's resolution of the issue will not be disturbed absent an error of law. *State v. Atchison,* 268 S. C. 588, 235 S. E. (2d) 294, *cert. denied,* 434 U. S. 894, 98 S. Ct. 273, 54 L. Ed. (2d) 181 (1977).

Franklin contends that a statement induced by the police by preying upon a defendant's concern for or desire to contact his family must be excluded from evidence as involuntary. *Lynum v. Illinois,* 372 U. S. 528, 83 S. Ct. 917, 9 L. Ed. (2d) 922 (1963); *Haynes v. Washington,* 373 U. S. 503, 83 S. Ct. 1336, 10 L. Ed. (2d) 513 (1963). He argues that he was not allowed to make a phone call to find out the condition of his girlfriend until after he made a statement and, therefore, the statement was inadmissible.

In contrast, the State contends that Franklin's statement was voluntary and argues that such voluntariness is indicated by the following evidence: Franklin initiated contact with the Investigator; he was allowed several phone calls to find out the condition of his girlfriend, both before and after his statement was made; he admitted his role in the robbery and murder; he signed a waiver of rights; and he testified that he understood his rights. In addition, Huff testified that no promises or threats were made, nor was Franklin coerced in any way.

We conclude that the State met its burden by a preponderance of the evidence and that the trial judge properly determined that the July 20 statement was voluntarily made. We, therefore, find that the statement was properly admitted.

### 2. *Jury Charge on Accomplice Liability*

Four people were involved in the commission of this crime: Keith Odom, Willie Franklin and his brothers, Rodney Franklin and James Washington. Willie and Rodney testified at Willie's trial. Both had made prior statements. In Rodney's first statement he indicated that Willie had committed the murder. He later pled guilty to the murder and received a life sentence. During Willie's trial, Rodney testified that he and Keith Odom were responsible for the murder and that Willie was not aware that this was going to take place.

Although their statements and testimony at trial differed in regard to who actually committed the murder, both Rodney and Willie indicated that these four individuals were in some way involved in the commission of the crimes that occurred and that all of them knew a robbery was going to take place.

As noted above, Willie Franklin indicated in a prior statement that he murdered the victim. He denied this at trial and testified that the events occurred as follows. On the night of July 13, Willie Franklin was with his girlfriend. Odom, Washington and R. Franklin came by and asked Willie if he wanted to get high. The four men then went to the Holiday Inn where Odom was supposed to borrow some money. Odom went in the hotel while the other three waited in the car. After a while, Willie went to the check-in window, got some change, got something to drink and returned to the car. Washington also went to get something to drink and returned to the car. When Odom returned, he took Rodney Franklin off to the side and then went into the hotel. When they came out, they asked Willie to come in and then told him they were going to rob the hotel. The men argued about committing the robbery. When a Sheriff's patrol car drove by, the four men left in their car. They returned to the Holiday Inn. Willie Franklin admitted that the purpose of

going back into the hotel was to steal. He testified that he stole a gray box, but that the only time he saw the victim was after he had been murdered.

Before the jury was charged, defense counsel requested that three additional charges be given on the principles of accomplice liability:

(1) Prior knowledge that a crime is going to be committed, without more, is not sufficient to make a person guilty of that crime.

(2) Mere knowledge that the principal is going to commit an offense, even when coupled with presence at the commission of the crime, is insufficient to convict one as a principal.

(3) Guilt as a principal is established by a presence at the scene as a result of prearrangement. Therefore, a finding of a prearranged plan or common scheme is necessary for a finding of guilt as a principal.

The trial judge denied thee requests to charge and instead instructed the jury as follows:

Finally, I charge you, Mr. Foreman and members of the jury, that it is the law of this State that if a crime is committed by two or more persons who are acting together in the commission of an offense, the act of one is the act of both or all. By way of illustration, two people can be guilty of killing another or murder when only one of the two had a pistol and only one bullet. If both are together, acting together, assisting each other in the commission of the offense, the law says that under those circumstances the act of one is the act of all and as it is sometimes said, the hand of one is the hand of all.

Franklin contends that the trial court did not properly charge the jury concerning the principles of accomplice liability. Franklin argues that the charge was incomplete and that it did not fully address all of the issues raised by the testimony.

In contrast, the State contends that the evidence did not support the first two charges requested and that the judge

included the substantial portion of the third request in his charge. We agree.

The first two requests which involve mere presence and prior knowledge of the commission of the crime are correct statements of South Carolina law. A defendant is entitled to a charge on mere presence if the evidence supports it. *State v. Kimbrell*, 294 S. C. 51, 362 S. E. (2d) 630 (1987). In this case, however, the evidence does not support a charge on mere presence. Willie Franklin testified that the purpose of going into the Holiday Inn the second time was to steal, that he did, in fact, steal a money box, and that the victim was murdered while the robbery was taking place. Therefore, his own testimony refutes any contention that he was merely present when the robbery occurred and that he was entitled to an instruction on "mere presence."

For the reasons discussed above, the lower court is affirmed.

GREGORY, C. J., and HARWELL, CHANDLER and FINNEY, JJ., concur.