23203

The STATE, Respondent v. Thomasina Capers OSBORNE, Appellant.

(392 S.E. (2d) 178)

Supreme Court

*Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, Columbia, for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M.*

*Coombs, Jr.* and *William Edgar Salter, III*, Columbia, and *Solicitor Wade S. Kolb, Jr.*, Sumter, *for respondent.*

Heard March 7, 1990.

Decided April 30, 1990.

TOAL, Justice:

Thomasina Osborne was convicted of criminal conspiracy in connection with the October 15, 1987, robbery and murder of Otis Logan. On appeal, she challenges the admissibility of two statements on the grounds that they were not made voluntarily. We reverse and remand for a new trial.

## FACTS

On November 6, 1987, police officers arrested Thomasina Osborne on a warrant for escape. She had escaped from the Women's Correctional Institute. When she was taken to the jail, she indicated to the arresting officer that she had something she wanted to talk about with the police. The arresting officer asked other officers and the sheriff to talk to her.

Osborne discussed several different crimes, including various thefts and break-ins and indicated that a man named Ronald Garrett was involved in each of the crimes. The investigating officers for the particular crime she was discussing were called in to talk to her. Each officer testified that she was given the *Miranda* rights and was not promised a reward nor threatened in any way.

At some point during the night of November 6, the sheriff came over to discuss the Otis Logan case. Osborne was advised of her *Miranda* rights. After questioning by several officers, a taped interview was conducted which was ultimately reduced to writing in the early morning hours on November 7, 1987. In this statement, Osborne admitted that she was with Garrett when he shot Mr. Logan.

On November 9, Osborne was questioned again about her involvement in various criminal activities with Garrett. Osborne gave eleven separate statements on November 9. Between November 1987 and January 1988, Osborne was questioned on numerous occasions by various officers. In December, she wrote the sheriff and told him that she wanted

to revise her statement. A revised statement was given by Osborne on January 21.

An *in camera* hearing was held and the trial judge found that the statements were voluntarily made. Osborne appeals this ruling.

## LAW/ANALYSIS

Osborne contends that the November 7 and January 21 statements should have been excluded on the grounds that they were not voluntarily made. We agree.

The State bears the burden of proving by a preponderance of the evidence that a defendant's rights were voluntarily waived after being advised of his *Miranda* rights. *State v. Franklin*, 29 S.C. 133, 382 S.E. (2d) 911 (1989) and cases cited therein. This is true even where a defendant has signed a waiver of rights form. *Id.*

Osborne contends that these statements were coerced by threats issued by the interrogating officers. Osborne testified that she was threatened by the officers that she would be charged with "withholding evidence" if she did not make a statement. She also claimed that the officers said that her November 7 statement did not "fit the facts" and therefore she must make another statement or face charges for "withholding evidence." On appeal, Osborne contends that even though she was advised of her *Miranda* rights, these statements were coerced because of these threats and that the State failed to prove by a preponderance of the evidence that her rights were voluntarily waived.

Although many officers testified that Osborne was repeatedly advised of her rights and that she was not threatened or coerced, this evidence was disputed by the testimony of Osborne and the sheriff. According to their testimony, Osborne was interrogated on numerous occasions between November 1987 and January 1988. The sheriff testified that "every time" she was warned that she could be charged with "withholding evidence."

> [SHERIFF] Okay. We stated—It was said in my presence that she would be charged with withholding—it was a law against withholding information, giving a police officer false statements.

[DEFENSE COUNSEL] And you heard it said that she —there was a law against withholding information and she could be charged with that?

[SHERIFF] That's right .

[DEFENSE COUNSEL] And she was told that even before she signed this 11/7/87 statement, wasn't she?

[SHERIFF] Yes, sir.

When the officers were not satisfied with her first statement, she was told again that she could be charged if she did not revise her statement. The revised statement was made on January 21. The State contends that the sheriff was not present for the January 21 statement and therefore his testimony concerning threats would be irrelevant to this statement. We find this argument unpersuasive.

The record reveals that Osborne was threatened with charges on numerous occasions between November 7, 1987 and January 21, 1988. She was also interrogated by several officers on January 20. Therefore, the January 21 statement appears to be the product of all of these threats issued by the officers over the previous months.

We find that the threats described by the sheriff to be of such a coercive nature that they may render any statement made inadmissible.

[DEFENSE COUNSEL] So no matter what rights were read to Thomasina Osborne after November 7, 1987, she was told, "You don't have to say anything, but if you withhold evidence, you can be charged with a crime?"

[SHERIFF] That's basically what was said, yes, sir.

. . . .

[DEFENSE COUNSEL] What dates can you tell us that she was told that if she withheld information she could be charged with a crime? Do you remember what dates those were?

[SHERIFF] The very first night that she was questioned.

[DEFENSE COUNSEL] The very first night that she was questioned she was told that if she withheld information she could be charged with a crime?

[SHERIFF] That's correct.

In essence, Osborne was told on numerous occasions that she could remain silent, but if she knew any information, she could be charged with a crime. This case is clearly distinguishable from *State v. Rochester*, 301 S.C. 196, 391 S.E. (2d) 244 (1990) where the challenged statement was made after the polygraph examiner told the defendant that it would be in his best interest to tell the truth.

We conclude that the State failed to meet its burden by a preponderance of the evidence and the trial court erred in admitting the statements into evidence. Therefore, the lower court is reversed and this case is remanded for a new trial. We need not address the remaining issues raised on appeal.

Reversed and remanded.

HARWELL, CHANDLER and FINNEY, JJ., concur.

GREGORY, C.J., concurring in result in separate opinion.

GREGORY, Chief Judge, concurring:

I agree with the result reached by the majority. I wish to emphasize, however, the applicable scope of review recently set forth in *State v. Rochester*, that on appeal the trial judge's factual finding of voluntariness will be disturbed only if so manifestly erroneous as to show an abuse of discretion. In my opinion, this is such a case. I therefore agree with the majority's conclusion.