506 S.E.2d 301

**The STATE, Respondent,**

v.

**Charles Allen McCRAY, Appellant.**

**No. 24841.**

Supreme Court of South Carolina.

Heard Jan. 10, 1996.
Decided Sept. 28, 1998.

---

Assistant Appellant Defender Robert M. Pachak, of South Carolina Office of Appellate Defense, Columbia; John C. Jepertinger and Jack W. Lawson, Jr., Florence, for appellant.

Attorney General T. Travis Medlock, Chief Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Harold M. Coombs, Jr., and Assistant Attorney General William Edgar Salter, III, Columbia; and Solicitor Dudley Saleeby, Jr., Florence, for respondent.

BURNETT, Justice:

Appellant was indicted by the Florence County Grand Jury on charges of murder, conspiracy, first degree burglary, arson, and armed robbery surrounding the death of Billy Graham. He was convicted of first degree burglary and conspiracy and acquitted of the three other charges. Appellant was sentenced to life imprisonment for burglary and five years' imprisonment for conspiracy.

### ISSUES

I. Did the trial judge err by ruling appellant's co-defendants' reasons for striking black jurors from the jury venire was not pretextual and by failing to grant appellant a severance?

II. Did the trial judge err by admitting appellant's February 26, 1988, confession into evidence?

III. Did the trial judge err by failing to grant appellant's motion for a mistrial after a co-defendant referred during closing argument to appellant's failure to testify?

### DISCUSSION

### I.

■ Appellant, who is black, was tried with two co-defendants, Roger Dewitt (Bill) Prince and Charlie Dorn Smith, who are white. Before the jury was sworn, appellant requested a *Batson*[1] hearing, arguing his co-defendants excluded black jurors from the venire because of their race. During the hearing, appellant stated he had previously moved for a severance, anticipating there would be difficulties in selecting a jury. The trial judge denied appellant's *Batson* motion, concluding *Batson* did not apply to co-defendants in a criminal trial.

During the pendency of appellant's appeal, the United States Supreme Court ruled *Batson* applies to criminal defendants as well as to the prosecution. *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33, 51 (1992) ("the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges."). Consequently, we remanded this matter to the trial court for the purpose of conducting a *Batson* hearing.

On remand, co-defendant Prince candidly stated, due to the passage of time, he did not remember exactly why he had struck the black jurors at issue but, referring to his notes, thought he struck Juror # 112 because she had two cousins who were sheriffs in New York and Juror # 26 because he had a friend who worked for the sheriff's department. Co-defendant Smith stated he did not want anyone with connection to law enforcement on the jury. Consequently, he struck Juror # 9 whose friend worked for SLED and Juror # 61 whose cousin worked for the sheriff's department.

Appellant argued the stated reasons for striking the four black jurors were pretextual because the co-defendants did not strike three white jurors, Jurors # 13, # 88, and # 181, who had similar connections to law enforcement. The trial

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the State from striking a venireperson on the basis of race).

judge concluded the stated reasons for striking the four black jurors were not pretextual. We agree.

Under *Batson* procedure as it existed at the time of appellant's trial, the proponent of the strike was required to present an explanation for the strike which was racially neutral, clear, reasonably specific, and legitimate. *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996). Whether a proffered reason was racially neutral was to be determined by examining the totality of the facts and circumstances in the record, including the credibility and demeanor of the proponent of the strike. *State v. Kelley,* 319 S.C. 173, 460 S.E.2d 368 (1995). If the explanation met these criteria, the opponent of the strike had the burden of proving the allegedly neutral reason was pretextual. Pretext could be demonstrated by showing similarly situated members of another race were seated on the jury.[2]

The record from the jury voir dire indicates the three white jurors who were seated on the jury were not similarly situated to the four black jurors who were struck from the jury. While the black jurors had relatives or friends who, at the time of trial, were employed in law enforcement, the relatives or friends of the white jurors were no longer employed in law enforcement.[3] The white jurors did not have the same relationship to law enforcement as the black jurors. Accordingly, appellant failed to meet his burden of establishing the co-defendants' stated reasons for striking the black jurors were pretextual. The trial judge's findings are supported by the evidence and should be affirmed. *State v. Adams, supra* (the trial judge's findings regarding purposeful discrimination are entitled to great deference and are to be set aside only if clearly erroneous).

---

**2.** At the time of the *Batson* hearing, this Court had not yet adopted the procedure outlined in *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). However, under *Purkett* procedure, we would reach the same conclusion.

**3.** Juror # 88 stated his friend was a former police officer. Juror # 181 stated his father-in-law was a highway patrolman from 1957 to 1968. Juror # 13 stated she had acquaintances who worked for law enforcement. Upon further questioning, however, she stated these acquaintances actually worked for the building commission.

■ Moreover, appellant's argument that the trial judge abused his discretion by denying his motion for a severance after his co-defendants struck the four black jurors is not preserved for appeal. Appellant never requested a severance for this reason. *State v. Byram,* 326 S.C. 107, 485 S.E.2d 360 (1997) (a party cannot argue one ground at trial then another ground on appeal). In any event, since we conclude there was no error in striking the four black jurors, there is no merit to appellant's argument that he should have been granted a trial separate from his co-defendants because they struck black jurors from the jury.

## II.

Appellant contends the trial judge erred in admitting into evidence his statement of February 26, 1988, for the following reasons: A) he had invoked his Fifth Amendment[4] right to counsel and the statement was thereafter obtained by improper police-initiated interrogation; B) the statement was obtained in violation of the Sixth Amendment;[5] C) the statement was obtained by trickery; and D) the statement was involuntary under the totality of the circumstances. We disagree.

The following facts were developed during the *Jackson v. Denno*[6] hearing. Perry Coker of the Clarendon County Sheriff's Department testified he arrested appellant on February 4, 1988, on charges of burglary and criminal sexual conduct. The warrants were signed by appellant's sister. Appellant was advised of his *Miranda* rights by Lieutenant Gamble from SLED. Appellant was not interviewed at that time because he was intoxicated. Twenty-four to forty-eight hours later, Coker asked appellant if he wanted an attorney appointed. Appellant responded "this was a family matter and given a little bit of time it would work itself out and that he did not want an attorney at that time." Appellant remained in custody.

---

4. U.S. CONST. amend. V.

5. U.S. CONST. amend. VI.

6. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

On February 17, 1988, appellant was arrested in Clarendon County for the murder of Paul Bradley, Jr. Coker spoke with appellant after the arrest and asked if he wanted an attorney appointed. Appellant responded he "felt like at the time that his people would hire an attorney and he did not want an appointed attorney on that charge."

However, Coker testified because of the "extra charge" (apparently the Bradley murder charge), he felt appellant needed an attorney. Consequently, on February 18, 1988, Coker testified he took appellant to the Clerk of Court's office and the public defender, Harold Detwiler, was appointed to represent appellant on the burglary and criminal sexual conduct case. Coker again asked appellant if he wanted an attorney for the murder charge and appellant replied he did not want an appointed attorney for a charge of that serious a nature and would have his sister retain a lawyer.

Four days later, on February 22, 1988, Coker and Lieutenant Gamble were present with appellant in the sheriff's office. Before speaking with appellant, Gamble telephoned Detwiler in appellant's presence. Gamble testified he told Detwiler he wanted to discuss the Bradley murder "and this other case" [7] with appellant and to run a polygraph test. As a result of the telephone conversation, appellant was transported to SLED and he submitted to a polygraph test.

Prior to administering the polygraph test, the test administrator, Johnny Hartley, testified he advised appellant of his *Miranda* rights, including the right to remain silent, that anything he said could be used against him in court, and the right to have a lawyer present, and appellant signed a waiver form acknowledging he understood each of the rights.

The same day, after returning from SLED, Coker spoke with appellant and his sister.[8] Coker testified he advised appellant of his *Miranda* rights, including the right to talk to a lawyer and have a lawyer present while being questioned.

7. It is unclear if "this other case" refers to the burglary and CSC case or the Graham murder case. Gamble testified he never asked appellant about the burglary and CSC charges.

8. It is not clear if this is the same sister who issued the earlier warrants against appellant.

Appellant then gave a statement with regard to the Bradley homicide. Appellant's statement was reduced to writing and he signed the document.

On February 23, 1988, Coker spoke with appellant's nephew who was also charged with the Bradley murder. As a result of that discussion, Coker testified he again spoke with appellant on February 24th about the Bradley murder after appellant executed another waiver of rights form. A tape recording of this conversation was made and later transcribed. Appellant signed the transcription of the tape recording. In addition, appellant signed a waiver form confirming he had been advised of his rights prior to the February 22 questioning and at the time of his arrest.

Coker testified during his dealings with appellant from February 22–24, appellant referred to the death of Billy Graham. According to Coker, appellant was willing to tell "his part" but did not want to "tell it all" for fear of the lives of his family. Until that time, Coker stated Graham's death was thought to be accidental.[9] Coker stated appellant said he would take a polygraph test to prove Graham's death was not accidental.

On February 26, 1988, appellant was again transported to SLED and a polygraph test was administered. Hartley testified he again advised appellant of his *Miranda* rights and appellant signed a form acknowledging he understood the rights. Hartley stated appellant said he did not want an attorney and did not need one with him for the polygraph test.

When he was returned to the sheriff's office, appellant signed a waiver of rights form which advised him, among other things, he had the right to talk to a lawyer and to have a lawyer present while being questioned. In addition, the waiver form stated appellant had been advised of the right to remain silent and anything he said could and would be used against him in a court as evidence against himself. At this point, appellant told the police he had killed Graham for

---

**9.** On June 10, 1987, Graham was found dead in his residence. The residence had been extensively burned. The pathologist who performed the autopsy concluded the cause of death was thermal burns and carbon monoxide poisoning. Investigators were unable to determine the cause of the fire.

$20,000. Appellant's statement was taped and later transcribed; however, appellant did not sign the transcription. Coker testified he did not know whether the transcription had been presented to appellant for his signature.

In relevant part, the transcription of appellant's February 26, 1988, statement is as follows:

GAMBLE: Charles now *this is an informal discussion* between Capt. Coker with Clarendon County and Gary Martin with SLED and Julius Lee with the Florence County Sheriff's Dept. Of course, you know me. I'm J.E. Gamble with SLED but now I want (sic) again ask you *is it not true that I have given you your rights* the (sic) start with is that right, is that correct, *I'm going to read it again but this is not going to be a statement that we are going to take from you. This is going to be a kind of off the cup (sic) question and answer thing that we need to compile the evidence to check this situation out for some backup support evidence.*

CHARLES: Okay.

GAMBLE: But now, *(reading of the Miranda rights) do you understand the rights I have explained to you?*

CHARLES: *Yes sir.*

GAMBLE: *Are you willing to talk with us now without a lawyer being present?*

CHARLES: *Yes.*

GAMBLE: Allright (sic). Well like I said Charles we just want to, *this is just for a purpose of us getting some questions and answers.* Now it is Friday, February 26, 1988 and the time is 6:08 P.M. and we are at the Clarendon County Sheriff's Dept. The main thing that we want to talk about Charles is like I said we need this information for what not. . . .

(emphasis added).

Thereafter, Gamble continued to ask appellant questions and appellant responded.

Coker testified on every occasion he spoke with appellant, appellant was advised of his rights. He stated no one threatened or coerced appellant into giving a statement nor offered appellant any reward or lenience. Coker testified appellant's

only concern was for his nephew. Coker stated appellant never stopped answering questions and never asked for an attorney.

On cross-examination, Coker admitted he had taken a statement from Caesar Wheeler on February 18, 1988. In this statement, Wheeler stated appellant told him he had killed Graham. Coker further testified law enforcement initiated every interview with appellant.

The Clarendon County Deputy Clerk of Court testified on February 18, 1988, Detwiler was appointed to represent appellant on the burglary and CSC charges and, later, he was appointed on the Clarendon County murder charge. The clerk testified appellant did not sign a form waiving his right to an appointed attorney.

Public Defender Detwiler testified on February 18 he was appointed to represent appellant on the burglary and CSC charges and he spoke with appellant on February 19 regarding these charges. Detwiler stated he was later appointed to represent appellant on the Bradley murder charge. Detwiler explained at some point he received a telephone call from Gamble asking for permission to speak with appellant about another charge against appellant in another county. Detwiler stated Gamble did not explain the nature of this charge. Detwiler testified he responded it made no difference to him, and he knew Gamble realized he did not have authority to authorize a conversation with appellant.

### A.

Under the Fifth Amendment, custodial interrogation may not occur if an accused invokes his right to have counsel present during the interrogation. A valid waiver of the right to counsel will not be presumed simply from the silence of the accused after *Miranda* warnings are given. The record must show an accused was offered counsel but intelligently and knowingly rejected the offer. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The Fifth Amendment right to counsel is not offense-specific; once an accused invokes the right to counsel for interrogation regarding one offense, he may not be ap-

proached regarding any offense unless counsel is present. *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); *State v. Wilder*, 306 S.C. 535, 413 S.E.2d 323 (1991). If the accused invokes the right to counsel, interrogation must cease and police may not conduct interrogation unless the accused initiates communication, exchanges, or conversations with the police. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

The record establishes appellant did not invoke his right to counsel prior to interrogation by police on February 26, 1988, or at any other time. Appellant never indicated he declined to speak to the investigators unless his attorney was present. Instead, appellant signed a document in which he acknowledged being informed of his right to the presence of counsel during questioning and specifically declined that right. In addition, he verbally stated he was willing to speak with law enforcement without the presence of counsel. Appellant's prior statement that he would retain a lawyer at some future date did not constitute an invocation of his right to counsel for *Miranda–Edwards* purposes. *State v. Linnen*, 278 S.C. 175, 293 S.E.2d 851 (1982) (accused did not invoke his Fifth Amendment right to counsel where he was not reluctant to answer questions after receiving *Miranda* warnings, even though he had applied for appointed counsel and stated he intended to obtain his own attorney).[10]

Moreover, appointment of the public defender did not constitute evidence of an intent by appellant to speak to police only with counsel present. *Contra Arizona v. Roberson, supra* (accused invoked right to counsel where he stated he wanted a lawyer before answering any police questions); *Edwards v. Arizona, supra* (accused invoked right to counsel where he requested counsel, interrogation ceased, and the next morning he told police he did not want to speak to anyone); *State v. Cox*, 287 S.C. 260, 335 S.E.2d 809 (Ct.App. 1985), *aff'd in part and rev'd on other grds.*, 290 S.C. 489, 351 S.E.2d 570 (1986) (accused invoked right to counsel by stating,

---

10. For Sixth Amendment purposes, accused's statement at the bond hearing that he planned to secure counsel in the future was ambiguous and did not constitute an invocation of the right to counsel. *State v. Drayton*, 293 S.C. 417, 361 S.E.2d 329 (1987).

"I'll tell you about it when I talk to my lawyer."). Accordingly, appellant had not invoked his right to counsel on February 26th and his statement on that date was not taken in violation of the Fifth Amendment.

### B.

 Appellant's February 26, 1988, statement was not taken in violation of his rights under the Sixth Amendment. The Sixth Amendment right to counsel attaches when judicial proceedings are initiated against the accused. *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (the Sixth Amendment attaches after initiation of adversarial judicial proceedings against the defendant). At the time appellant confessed, judicial proceedings had not yet been initiated against appellant for the Graham murder.[11] *State v. George*, 323 S.C. 496, 476 S.E.2d 903 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1261, 137 L.Ed.2d 340 (1997) (Sixth Amendment right to counsel had not attached where accused confessed to homicide before judicial proceedings had been initiated). Additionally, although counsel had been appointed to represent appellant on other charges, appellant had not requested counsel in regard to the Graham murder. *State v. Register*, 323 S.C. 471, 476 S.E.2d 153 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 988, 136 L.Ed.2d 870 (1997) (Sixth Amendment right to counsel is offense-specific; the mere fact counsel was appointed in one matter does not invoke the Sixth Amendment relating to a different matter).

### C.

 Contrary to appellant's assertion, Gamble's statements, "this is an informal discussion," "this is not going to be a statement," "this is going to be an ... off of the cup (sic) question and answer thing that we need to compile the evidence," did not constitute police trickery, rendering appellant's statement involuntary. Appellant has misconstrued Gamble's statements. Gamble's statements were clearly intended to convey the manner in which he planned to conduct his interview of appellant. Gamble informed appellant he would be

---

11. Appellant's brief indicates he was indicted for charges surrounding Graham's death during the January 1989 grand jury term.

taking the statement through questions and answers, not by appellant giving a monologue.

### D.

Considering all of the circumstances surrounding appellant's confession, we conclude the statement was voluntarily given and properly admitted. The statement was given after appellant was apprised of his *Miranda* rights and after he signed a document indicating he waived those rights. In addition, the transcription of appellant's statement indicates he verbally agreed to speak to the investigators. There is no evidence appellant was coerced into making a statement. The trial judge properly found appellant's statement was voluntarily given. We affirm the trial judge's ruling. *State v. Von Dohlen*, 322 S.C. 234, 471 S.E.2d 689, *cert. denied,* —— U.S. ——, 117 S.Ct. 402, 136 L.Ed.2d 316 (1996) (on appeal, the conclusion of the trial judge as to the voluntariness of a confession will not be reviewed unless so erroneous as to show an abuse of discretion).

### III.

During closing argument, co-defendant Smith referred to appellant's and Prince's decisions not to testify. The trial judge denied appellant's and Prince's motions for a mistrial based on this comment.

Appellant now argues the trial judge's denial of his motion for a mistrial was an abuse of discretion. The Court considered this issue in the context of Prince's appeal and determined the trial judge did not abuse his discretion by denying the motion for a mistrial. *State v. Prince*, 316 S.C. 57, 447 S.E.2d 177 (1993). For the same reasons, the denial of appellant's motion for a mistrial was not an abuse of discretion.

**AFFIRMED.**

TOAL and MOORE, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.

FINNEY, C.J., concurring in result only.