559 S.E.2d 856

**The STATE, Respondent,**

v.

**Roy Edward HOOK, Appellant.**

**No. 3424.**

Court of Appeals of South Carolina.

Heard Nov. 6, 2001.

Decided Dec. 17, 2001.

Rehearing Denied Feb. 21, 2002.

404

406

Assistant Appellate Defender Katherine Carruth Link, of South Carolina Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan and Assistant Attorney General Melody J. Brown, all of Columbia; and Solicitor Barbara R. Morgan, of Aiken, for Respondent.

ANDERSON, J.

Ray Edward Hook appeals his conviction for driving under the influence, third offense. We reverse and remand.

## *FACTS/PROCEDURAL BACKGROUND*

While driving during the early morning hours of January 15, 1999, Hook was involved in an automobile collision with Roger Smith of the Williston Police Department, who was operating a police department patrol car. The investigating trooper, Joseph Cruz, cited Smith for driving too fast for conditions and charged Hook with driving under the influence.

Both Hook and Smith sustained injuries in the accident and both were taken to a hospital for treatment. Hook was given two intravenous doses of Toradol, a non-narcotic pain killer. The physician also gave Hook a prescription for Darvocet, a narcotic pain killer. After Hook received medical attention, Cruz arrested him, advised him of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and took him to the detention center for a breathalyzer test. Hook ultimately declined to take the breathalyzer.

Hook was held at the detention center for a number of days. On the day after the accident, he continued to experience severe pain to his side and chest and began spitting up blood. Unbeknownst to law enforcement personnel, Hook had in fact suffered a ruptured spleen which later required surgical removal.

On the day after the accident, Hook's probation agent, Judy Brown, spoke with him and asked that he submit to a drug test. Another probation agent, Marshall Bunch, administered the test. Neither agent advised Hook of his rights under *Miranda*. After informing Hook he tested positive for cocaine, the probation agents questioned him about cocaine usage. According to the agents, Hook admitted using cocaine on the night before the accident. Brown testified Hook admitted his cocaine use caused the accident.

At trial, Hook's attorney argued several grounds for the exclusion from evidence of the drug test results and Hook's statement to the probation agents. Defense counsel moved *in limine* to exclude the test results and statements on the ground the information was privileged under South Carolina Code Annotated Section 24–21–290 (Supp.2000).

The court ruled the test results were inadmissible, but the statements were a "clear admission against [Hook's] interest" and were, therefore, admissible.

Later in the trial, the court addressed the issue of voluntariness. After conducting a *Jackson v. Denno*[1] hearing, the court ruled the statement was voluntary but privileged and thus inadmissible, rejecting Hook's argument the statement was involuntary and was taken in violation of his Fifth Amendment rights.

Hook testified in his own defense. He admitted he drank three beers between 5:00 and 7:30 p.m. on January 14, 2000, but denied his ability to drive a car was impaired at the time of the accident. At the close of his testimony, the solicitor requested permission to impeach Hook's testimony with his statement to the probation agents. Specifically, the solicitor requested permission to question Hook about drug use, then impeach any denial of drug use with testimony from the

---

**1.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

probation agents concerning his statements to them. The court initially indicated that because Hook took the stand in reliance on the court's prior ruling that the statement was inadmissible, the solicitor would not be allowed to question him about drug use or use his statements for impeachment purposes. However, after hearing additional arguments on the issue, the court reversed its position and ruled the State could use the statements for impeachment. In reaching this determination, the court reasoned Hook opened the door for impeachment in his testimony. The court further reasoned Hook's statements were voluntary inasmuch as he did not assert his privilege to remain silent in the face of the probation agents' questions, and the United States Supreme Court had previously sanctioned using voluntary, but otherwise inadmissible statements, to impeach a defendant when he attempts to commit perjury.

On cross examination, over defense counsel's objection, the solicitor questioned Hook about his statement to the probation agents. Hook admitted he told the officers he used powder cocaine "a couple of days before the accident." He denied, however, using cocaine on the night of January 14 prior to the accident during the early morning hours of January 15. He further denied telling the probation agents he used cocaine on the night of the accident or that his cocaine use caused the accident. The solicitor then recalled Brown, who recited Hook's alleged statements, thereby contradicting Hook's testimony.

### *LAW/ANALYSIS*

### I. Statutory Privilege

Initially, we address the efficacy of Section 24–21–290 (Supp.2000), which provides:

**Information received by probation agents privileged.**

All information and data obtained in the discharge of his official duty by a probation agent is privileged information, is not receivable as evidence in a court, and may not be disclosed directly or indirectly to anyone other than the judge or others entitled under this chapter to receive reports unless ordered by the court or the director.

Elementally, the statute is trifurcated:

(1) all information and data obtained in the discharge of his official duty by a probation agent is privileged information;

(2) is not receivable as evidence in a court; and

(3) may not be disclosed directly or indirectly to anyone other than the judge or others entitled under this chapter to receive reports unless ordered by the court or the director.

■ The State contends that the language of the statute in element three "ordered by the court" refers to any court at any time. We reject that contention and rule that the statute is clearly and unambiguously *referencing the court in the probation setting.*

■ The defendant argues that the verbiage in the statute in element two "is not received as evidence in court" restricts the use of any statements by a probationer to a probation agent except in a probation revocation hearing. We agree.

■ Finally, we hold the statute creates an *exclusionary privilege.*

The statements made by Hook to the probation officers were nexed to the pending charge involving his custody.

Because we dispose of this case under the analysis of a separate issue, we decline to analyze the utilitarian efficacy of the statute as juxtaposed to factual scenarios involving possible waiver of the privilege.

## II. Statement to Probation Agents—Voluntary/Involuntary

On appeal, Hook argues the trial court erred in determining his statement to the probation agents was voluntarily made. We agree.

The Fifth Amendment to the United States Constitution provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const.amend. V. This provision governs state as well as federal criminal proceedings. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Article 1, Section 12, of the South Carolina Constitution contains a similar provision. S.C.

Const. Art. I, § 12 (". . . nor shall any person be compelled in any criminal case to be a witness against himself.").

■ The Fifth Amendment does not, of course, operate as a blanket prohibition against the taking of any and all statements made by criminal defendants to law enforcement officials. Volunteered statements, whether exculpatory or inculpatory, stemming from custodial interrogation or spontaneously offered up, are not barred by the Fifth Amendment. *State v. Kennedy*, 325 S.C. 295, 307, 479 S.E.2d 838, 844 (Ct.App.1996)(citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

■ "The test for determining the admissibility of a statement is whether it was knowingly, intelligently, and voluntarily given under the totality of the circumstances." *State v. Peake*, 291 S.C. 138, 139, 352 S.E.2d 487, 488 (1987); *see also State v. Rochester*, 301 S.C. 196, 391 S.E.2d 244 (1990) (trial judge's determination of whether statement was knowingly, intelligently and voluntarily made requires examination of totality of circumstances surrounding waiver). The State bears the burden of establishing voluntariness by a preponderance of the evidence.

> If a defendant was advised of his *Miranda* rights, but nevertheless chose to make a statement, the "burden is on the State to prove by a preponderance of the evidence that his rights were voluntarily waived." *State v. Washington*, 296 S.C. 54, 370 S.E.2d 611 (1988) (emphasis in original); *State v. Neeley*, 271 S.C. 33, 244 S.E.2d 522 (1978). The State bears this burden of proof even where a defendant has signed a waiver of rights form. . . . The trial judge's determination of the voluntariness of a statement must be made on the basis of the totality of the circumstances, including the background, experience and conduct of the accused. *State v. Linnen*, 278 S.C. 175, 293 S.E.2d 851 (1982). The trial judge's resolution of the issue will not be disturbed absent an error of law. *State v. Atchison*, 268 S.C. 588, 235 S.E.2d 294, cert. denied, 434 U.S. 894, 98 S.Ct. 273, 54 L.Ed.2d 181 (1977).

*State v. Franklin*, 299 S.C. 133, 137–38, 382 S.E.2d 911, 913–14 (1989). *See also State v. McLeod*, 303 S.C. 420, 423, 401 S.E.2d 175, 177(1991)(The trial court's "determination of the

voluntariness of a statement will not be disturbed unless so manifestly erroneous as to show an abuse of discretion amounting to an error of law."), overruled on other grounds by *State v. Evans,* 307 S.C. 477, 415 S.E.2d 816 (1992).

■ In considering whether a statement was voluntarily given, the court must determine the existence or nonexistence of coercive police activity. *State v. Salisbury,* 498 S.E.2d 655, 666, 330 S.C. 250, 272 (Ct.App.1998)("Coercive police activity is a necessary predicate to finding a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment.")(*citing Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986)); *State v. Linnen,* 278 S.C. 175, 293 S.E.2d 851 (1982)(statements were given freely and voluntarily, and were therefore admissible, even though interrogating officers encouraged the statements, where officers were not coercive or threatening and statements were not procured by improper influence).

■ The concept that the privilege against self-incrimination encompasses the right to be free from being penalized for its exercise is well established.

> [W]hen a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment and cannot be used against the declarant in a subsequent criminal prosecution.
>
> . . .
>
> Similarly, our cases have established that a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.

*Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135–36, 53 L.Ed.2d 1 (1977)(holding the threat of removal from political party office for refusal to testify without immunity before a grand jury was coercive); *see also Lefkowitz v. Turley,* 414 U.S. 70, 80, 94 S.Ct. 316, 322, 324, 38 L.Ed.2d 274(1973)(threat of loss of public contracts for architects' refusal to waive privilege against self-incrimination was penalty amounting to coercion); *Gardner v. Broderick,* 392 U.S. 273, 279, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968)(holding a police officer could not be discharged from his employment

solely because he refused to forfeit his Fifth Amendment right against self-incrimination; the privilege against compelled self-incrimination could not abide any "attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment."); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967)(threat of discharge from employment as police officer for refusal to forfeit privilege against self-incrimination was coercive); *State v. Osborne,* 301 S.C. 363, 367, 392 S.E.2d 178, 180 (1990)(statements defendant made after being told she would be charged with withholding evidence if she did not make a statement were not voluntary, even though defendant was advised of *Miranda* rights).

In *Minnesota v. Murphy,* 465 U.S. 420, 427, 104 S.Ct. 1136, 1142, 79 L.Ed.2d 409 (1984), the Court found that "the general obligation to appear and answer questions [before a probation officer] truthfully did not in itself convert Murphy's otherwise voluntary statements into compelled ones." "A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege." *Id.* at 435, 104 S.Ct. 1136, 1146, 79 L.Ed.2d 409. However, the court expressly contemplated:

> The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution.

*Id.*

In contrariety to Murphy, who was *not* in custody, Hook was in *jail* at the time of the probation interview and all of the statements by Hook were made to the probation agent in the *jail* setting. Indisputably, Hook was in custody. Hook was *not* advised of his *Miranda* warnings by the probation

agents. The *Murphy* Court emphasized that Murphy was **not** under arrest and a different question would be presented if interviewed by a probation officer in a custodial setting.

The United States Supreme Court has addressed the voluntariness of a statement made while the defendant is in a state of medical urgency. In *Mincey v. Arizona*, 437 U.S. 385, 398–99, 98 S.Ct. 2408, 2416–17, 57 L.Ed.2d 290 (1978), the Court found:

> It is hard to imagine a situation less conducive to the exercise of "a rational intellect and a free will" than Mincey's. He had been seriously wounded just a few hours earlier, and had arrived at the hospital "depressed almost to the point of coma," according to his attending physician. Although he had received some treatment, his condition at the time of Hust's interrogation was still sufficiently serious that he was in the intensive care unit. He complained to Hust that the pain in his leg was "unbearable." He was evidently confused and unable to think clearly about either the events of that afternoon or the circumstances of his interrogation, since some of his written answers were on their face not entirely coherent. Finally, while Mincey was being questioned he was lying on his back on a hospital bed, encumbered by tubes, needles, and breathing apparatus. He was, in short, "at the complete mercy" of Detective Hust, unable to escape or resist the thrust of Hust's interrogation. (Citations and footnotes omitted).

Here, Brown went to the jail, in her capacity as a probation officer, for the purpose of determining whether Hook was in compliance with the terms of his probation sentence prohibiting drug use. When Hook denied using drugs, she ordered a drug test. Bunch, the agent who administered the drug test, also went to the jail in his capacity as a probation agent. Bunch testified a probationer must answer the questions posed to him by probation officers, and stated Hook was aware that refusal to take the drug test would constitute a violation of his probation. In addition, Hook was suffering from an undiagnosed ruptured spleen at the time of the interrogation.

We hold the facts and circumstances attendant to this case amounted to the "classic penalty case" the Court

alluded to in *Minnesota v. Murphy.* Although there is no evidence the probation agents expressly threatened to revoke Hook's probationary sentence if he failed to answer their inquiries truthfully, the timing of the interview, the custodial atmosphere, and the other attendant circumstances unquestionably raised the implication revocation would result from any refusal to cooperate. Moreover, while Hook was not suffering from the same level of physical ailments as the defendant in *Mincey v. Arizona,* we find the following language particularly instructive:

> There were not present in this case some of the gross abuses that have led the Court in other cases to find confessions involuntary, such as beatings, *see Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682, or "truth serums," *see Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. But "the blood of the accused is not the only hallmark of an unconstitutional inquisition." *Blackburn v. Alabama,* 361 U.S. at 206, 80 S.Ct. at 279, 4 L.Ed.2d 242 (U.S.Ala.1960). Determination of whether a statement is involuntary "requires more than a mere color-matching of cases." *Reck v. Pate,* 367 U.S. 433, 442, 81 S.Ct. 1541, 1547, 6 L.Ed.2d 948. It requires careful evaluation of all the circumstances of the interrogation.

*Mincey v. Arizona,* 437 U.S. 385, 401, 98 S.Ct. 2408, 2418, 57 L.Ed.2d 290.

We find the totality of the circumstances in this case amounted to coercion egregious enough to render any statement Hook made to the probation officers involuntary.

### III. Use of Involuntary Incriminating Statement for Impeachment Purposes

■ We further hold that because the statements were not voluntarily made, the trial court erred in allowing their use for any purpose, including impeachment.

■ Generally, a statement obtained in violation of the requirements of *Miranda* may be used for impeachment purposes. *See Oregon v. Hass,* 420 U.S. 714, 721–22, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (statement taken in violation of Fifth Amendment right to counsel admissible for impeachment); *Harris v. New York,* 401 U.S. 222, 224–26, 91 S.Ct.

643, 28 L.Ed.2d 1 (1971) (statement taken without proper *Miranda* warnings admissible for impeachment).

 Nonetheless, "an accused's *involuntary* incriminating statement is *inadmissible for any purpose,* including impeachment." *State v. Victor,* 300 S.C. 220, 223, 387 S.E.2d 248, 249 (1989). It is clearly the law that the use of an involuntary statement in any manner violates due process of law. In *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 322, 324, 38 L.Ed.2d 274(1973), the Supreme Court explained:

The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *McCarthy v. Arndstein,* 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924), squarely held that "(t)he privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it. The privilege protects a mere witness as fully as it does one who is also a party defendant."

In this respect, *McCarthy v. Arndstein* reflected the settled view in this Court. The object of the Amendment "was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime." *Counselman v. Hitchcock,* 142 U.S. 547, 562, 12 S.Ct. 195, 198, 35 L.Ed. 1110 (1892). *See also* Bram v. United States, 168 U.S. 532, 542—543, 18 S.Ct. 183, 186—187, 42 L.Ed. 568 (1897); *Brown v. Walker,* 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896); *Boyd v. United States,* 116 U.S. 616, 634, 637—638, 6 S.Ct. 524, 534, 536—537, 29 L.Ed. 746 (1886); *United States v. Saline Bank,* 26 U.S. 100, 1 Pet. 100, 7 L.Ed. 69 (1828). This is the rule that is now applicable to the States. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). "It must be considered irrelevant that the petitioner was a witness in a statutory inquiry and not a defendant in a criminal prosecution, for it has long been settled that the privilege protects witnesses in similar feder-

al inquiries." *Id.* at 11, 84 S.Ct. at 1495, 12 L.Ed.2d 653. In any of these contexts, therefore, a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution.

*Lefkowitz v. Turley,* 414 U.S. 70, 77–78, 94 S.Ct. 316, 322, 38 L.Ed.2d 274.

In *Mincey v. Arizona,* 437 U.S. 385, 397–98, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978), the United States Supreme Court elucidated:

Statements made by a defendant in circumstances violating the strictures of *Miranda v. Arizona,* supra, are admissible for impeachment if their "trustworthiness ... satisfies legal standards." *Harris v. New York,* supra, 401 U.S. at 224, 91 S.Ct. at 645, 28 L.Ed.2d 1; *Oregon v. Hass,* supra, 420 U.S. at 722, 95 S.Ct. at 1220, 43 L.Ed.2d 570. But any criminal trial use against a defendant of his involuntary statement is a denial of due process of law, "even though there is ample evidence aside from the confession to support the conviction." *Jackson v. Denno,* 378 U.S. supra, at 376, 84 S.Ct. at 1780, 12 L.Ed.2d 908; *Haynes v. Washington,* 373 U.S. 503, 518, 83 S.Ct. 1336, 1345, 10 L.Ed.2d 513; *Lynumn v. Illinois,* 372 U.S. 528, 537, 83 S.Ct. 917, 922, 9 L.Ed.2d 922; *Stroble v. California,* 343 U.S. 181, 190, 72 S.Ct. 599, 603, 96 L.Ed. 872; *see Chapman v. California,* 386 U.S. 18, 23 and n. 8, 87 S.Ct. 824, 828, 17 L.Ed.2d 705.

*See also New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979)(prior testimony before a grand jury, compelled under a grant of immunity, could not be used for impeachment purposes in a subsequent criminal trial).

## CONCLUSION

We hold that an ***involuntary incriminating*** statement may ***not*** be used for ***any*** purpose, including ***impeachment.***

Recognizing the strictures of due process, we hold Hook's conviction for driving under the influence, third offense, is

**REVERSED and the case is REMANDED for a NEW TRIAL.**

CONNOR and HOWARD, JJ., concur.