THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Fredward T. Clark,       
Appellant.
 
 
 

Appeal From Horry County
Sidney T. Floyd, Circuit Court Judge

Unpublished Opinion No.  2003-UP- 077
Submitted January 13, 2003  Filed January 28, 2003

AFFIRMED

 
 
 
Assistant Appellate Defender Robert M. Dudek, of Columbia; for Appellant.
Attorney General Henry Dargan McMaster, Chief 
 Deputy Attorney General John W. McIntosh, Assistant, Deputy Attorney General 
 Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, all of Columbia; 
 John Gregory Hembree, of Conway; for Respondent.
 
 
 

PER CURIAM: Fredward T. Clark was convicted 
 of murder, criminal conspiracy, and possession of a weapon during a violent 
 crime. He was sentenced to imprisonment for a term of forty years for murder, 
 and to two concurrent five-year terms for conspiracy and possession of a weapon 
 during a violent crime. Clark appeals the convictions, arguing the trial court 
 erred in refusing to suppress a statement he made to law enforcement officials.  
 We affirm.
FACTS AND PROCEDURAL HISTORY
On the morning of December 18, 1999, Michael Smalls 
 met with Clark outside of Clarks apartment.  During the visit, Clarks mother 
 came by and told Clark she had been in an argument with James Wilson, who had 
 slapped her in the face and held a gun to her head. After his mother left, Clark 
 went with Smalls to Smallss home where the two played video games and talked 
 about Wilson hitting Clarks mother.  Eventually, Clark asked Smalls for his 
 pistol, and Smalls gave him a handgun. 
After Clark loaded the gun with bullets, he and Smalls 
 went looking for Wilson. They found Wilson in the backyard of a nearby residence.  
 Clark told Smalls he wanted to speak with Wilson and Smalls began walking back 
 toward his own residence.  A short time later, Smalls heard gunshots in the 
 distance. Ten minutes later, Clark reappeared at Smallss home and the two played 
 more video games. Clark told Smalls he had walked up to Wilson, said God bless, 
 and shot him. 
On the same day as the events recounted above, Beverly 
 and Anthony Parson invited several friends and family members to their home 
 for a cookout.  Wilson was one of the guests.  He was upset when he arrived 
 at the Parsons home, but later calmed down. 
Ms. Parson was inside her home when she heard what 
 she thought was fireworks.  When she went to the door, she saw Wilson lying 
 facedown on the ground and a man wearing a mask standing over his body.  Although 
 she pleaded with the shooter not to kill Wilson, the shooter shot the victim 
 again then fled the scene. Wilson died from his wounds, which included three 
 shots to the head and one in the back. 
Lieutenant Charles Sessions, the officer who investigated 
 the shooting, interviewed Clark on three separate occasions.  On the day of 
 the shooting, Clark voluntarily went to the Conway Police Department with Officer 
 Sessions and was given his Miranda [1] warnings. Clark did not admit any culpability 
 for the shooting during the interview. 
Sessions and Captain Larry Alan Schilling next 
 interviewed Clark on April 25, 2000, the date of Clarks arrest.  Clark was 
 again given his Miranda warnings. During the interview, Schilling advised 
 Clark that the penalty is up to a judge and jury to decide; there are two things 
 here.  Theres life imprisonment or theres death, and thats what youre facing, 
 one of these two things. Schilling also told Clark that he might be looking 
 at the death penalty unless weve got your side of the story . . . because thats 
 whats going to help you in the long run, to explain what happened, why it happened 
 . . . the truth will set you free. Shilling also mentioned to Clark that a 
 voluntary or involuntary manslaughter charge might be available if Clark told 
 his side of the story, but noted that a solicitor would determine the charges.  
 In addition, Sessions told Clark that a five or ten year sentence was possible 
 if he would just tell his side of the story. Clark again denied any involvement 
 in the shooting. 
At Clarks request, another interview was conducted 
 on May 5, 2000. Clark was again given his Miranda warnings, and orally 
 waived them.  During the interview, Clark admitted he shot Wilson because he 
 believed Wilson slapped his mother and pointed a gun at her head. He indicated 
 that no promises were made to him during the interview. 
Prior to trial, Clarks counsel moved to suppress his 
 May 5, 2000 statement to police, arguing the statement was the product of coercion 
 and promises made during his April 25, 2000 interview with police. After an 
 in camera hearing held pursuant to Jackson v. Denno, 378 
 U.S. 368, 84 S. Ct. 1774, 12 L.Ed. 2d 908 (1964), the trial judge ruled the 
 May 5th statement was admissible.  Although the trial judge indicated he did 
 not intend to allow the April 25th statement to be introduced into evidence, 
 Clarks attorney specifically requested that the statement be admitted in light 
 of the judges ruling as to the admissibility of the May 5th statement. 
DISCUSSION
Clark asserts that the trial judge erred in allowing 
 his May 5, 2000 post-arrest statement into evidence because there exists a clear 
 nexus between the April 25th promises of lesser sentences and coercive threats 
 of the death penalty and the May 5th statement, thereby rendering both statements 
 involuntary.  We disagree.
In order to determine the admissibility of a statement, 
 the trial court must ascertain whether, under the totality of the circumstances, 
 it was knowingly, intelligently, and voluntarily given.  State v. Peake, 
 291 S.C. 138, 139, 352 S.E.2d 487, 488 (1987).   In order to introduce a statement 
 made after a defendant has been advised of his Miranda rights, the State 
 must establish by a preponderance of the evidence that the defendant voluntarily 
 waived those rights.  State v. Reed, 332 S.C. 35, 42, 503 S.E.2d 747, 
 750 (1998).  Once a voluntary waiver of the Miranda rights is made, 
 that waiver continues until the individual being questioned indicates that he 
 wants to revoke the waiver and remain silent or circumstances exist which establish 
 that his will has been overborne and his capacity for self-determination critically 
 impaired.  State v. Rochester, 301 S.C. 196, 200, 391 S.E.2d 244, 246 
 (1990) (quoting State v. Moultrie, 273 S.C. 60, 62, 254 S.E.2d 294, 294-95 
 (1979)).  
To be deemed voluntary, a confession may not be 
 extracted by any sort of threats or violence, [or] obtained by any direct or 
 implied promises, however slight, [or] by the exertion of improper influence.  
 State v. Rochester, 301 S.C. 196, 200, 391 S.E.2d 244, 246 (S.C. 1990) 
 (citing Hutto v. Ross, 429 U.S. 28, 30, 97 S. Ct. 202, 203, 50 L. Ed. 
 2d 194, 197 (1976)).   A statement induced by a promise of leniency is involuntary 
 only if so connected with the inducement as to be a consequence of the promise.   
 Peake, 291 S.C. at 139, 352 S.E.2d at 488.  On appeal, this court will 
 not disturb the trial judges resolution of the issue absent an error of law. 
 State v. Franklin, 299 S.C. 133, 138, 382 S.E.2d 911, 914 (1989).
Clark concedes no promises, threats, or other improper 
 methods were used during his May 5th interrogation.  Nonetheless, he would have 
 this court hold that his May 5th statement was so inextricably linked to his 
 April 25th interrogation that any improper promises or coercion the police made 
 or used during the April interrogation induced his May confession.  We agree 
 with the trial judge that no such nexus exists between the two interviews.  
 Both prior to and during the April 25th interrogation, Clark denied any involvement 
 in Wilsons shooting. Thus, there is no evidence that his will was overborne 
 or his capacity for self-determination impaired during the course of the April 
 25th interview.  Moreover, there is no evidence he was induced by statements 
 the officers made during the April 25th interview to immediately admit his involvement 
 in the shooting.  Indeed, he considered his position for more than one week 
 before he initiated contact with the officers and requested another meeting.  
 There is no evidence in the record indicating that during the interim he was 
 in any way further influenced by law enforcement officials to confess to the 
 shooting.  
Because there is no evidence that any improprieties 
 occurred during the May 5th confession, and because we agree with the trial 
 court that the April 25th interrogation was not inextricably linked to Clarks 
 May 5th confession, we hold the May 5th statement was voluntarily made and, 
 therefore, properly admitted.
In any event, we hold the statements the officers 
 made to Clark during the April 25th interrogation did not amount to impermissible 
 promises or coercive threats.  It is undisputed the officers discussed lesser 
 charges and lessened sentence exposure with Clark.  However, unlike the circumstances 
 in Peake, where the defendants inculpatory statement was involuntary 
 because he made it after interrogating officers unequivocally told him the State 
 would not seek the death penalty if he gave a statement, there is no evidence 
 indicating the solicitor assured Clark his confession would enable him to avoid 
 the death penalty.  See Peake, 291 S.C. at 139, 352 S.E.2d at 
 488. To the contrary, Clarks interrogators expressly informed him that the 
 solicitor would determine the charges to be brought against him, and a judge 
 would determine his sentence.  Further, we are aware of no authority, and Clark 
 cites none, in support of the proposition that the mere mention of the death 
 penalty during an interrogation stemming from a murder investigation will automatically 
 render a statement involuntary.  Notably,  the mention of the death penalty 
 in this case did no more than illustrate the seriousness of the crime Clark 
 was charged with, inasmuch as the facts of the case actually did give rise to 
 the possibility that the solicitor would seek the death penalty upon Clarks 
 conviction.  See S.C. Code Ann. § 16-3-20(C)(a)(3)(1976) (including, 
 among enumeration of aggravating circumstances, that [t]he offender by his 
 act of murder knowingly created a great risk of death to more than one person 
 in a public place by means of a weapon or device which normally would be hazardous 
 to the lives of more than one person.).
Further, to the extent Clark argues on appeal that 
 he was essentially forced into testifying in his own defense at trial by the 
 trial courts ruling as to the admissibility of his statement, we reject the 
 contention.  The trial court properly ruled the statement was voluntary and 
 admissible.  As such, Clarks decision to testify on his own behalf was tactical 
 in nature and did not stem from any error on the part of the trial court in 
 admitting the statement.   
For the foregoing reasons, the conviction is
AFFIRMED.  
HEARN, C.J., CURETON, AND ANDERSON, J.J., concur.

 
 [1]           Miranda v. Arizona, 384 U.S. 
 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).